Robert Spencer WOOD, Plaintiff,

v.

DIAMOND STATE TELEPHONE COMPANY, a Delaware Corporation, and Bell Telephone Company of Pennsylvania, a Pennsylvania Corporation, Defendants.

Civ. A. No. 76–57.

United States District Court,
D. Delaware.

Nov. 22, 1977.

Thomas Herlihy, III, of Herlihy & Herlihy, Wilmington, Del., for plaintiff.

Martin P. Tully and Richard D. Allen of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Hubert Thurschwell, The Diamond State Tele. Co., Philadelphia, Pa., for defendants.

## OPINION

STAPLETON, District Judge:

Robert Spencer Wood brought this action against The Diamond State Telephone Company, a Delaware corporation (hereinafter "Diamond"), The Bell Telephone Company of Pennsylvania, a Pennsylvania corporation, The American Telephone and Telegraph Company, a New York corporation, and The American Telephone and Telegraph Company of Delaware, a Delaware corporation. Pursuant to a stipulation among the parties, the action has been dismissed with prejudice as to the latter two corporations.

The original complaint alleges that Wood, a veteran with a disability of 30% or more, is entitled to damages flowing from Diamond's refusal to hire him. He applied for employment with Diamond and was subsequently interviewed and scheduled for a medical examination on February 5, 1974. Shortly after the examination, according to the complaint, Wood was told that he would not be hired because "in ten or twenty years . . . [he] might develop some condition related to his present disability" which would subject Diamond to a disability pension claim.

The plaintiff's first theory of recovery is grounded upon Section 503 of the *Vietnam Era Veteran's Readjustment Act of 1972*, 38 U.S.C. § 2012 (1972), as it existed prior to its amendment in December of 1974. Section 503 then provided:

(a) Any contract entered into by any department or agency for the procurement of personal property and non-personal services (including construction) for the United States, shall contain a provision requiring that, in employing persons to carry out such contract, the party contracting with the United States shall give special emphasis to the employment of qualified disabled veterans and veterans of the Vietnam era. The provisions of this section shall apply to any subcontract entered into by a prime contractor in carrying out any contract for the procurement of personal property and non-personal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within 60 days after the date of enactment of

this section, which regulations shall require that (1) each such contractor undertake in such contract to list immediately with the appropriate local employment service office all of its suitable employment openings, and (2) each such local office shall give such veterans priority in referral to such employment openings.

(b) If any disabled veteran or veteran of the Vietnam era believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to giving special emphasis in employment to veterans, such veteran may file a complaint with the Veterans' Employment Service of the Department of Labor. Such complaint shall be promptly referred to the Secretary who shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant consistent with the terms of such contract and the laws and regulations applicable thereto.

Sometime before the initiation of this lawsuit, the plaintiff resorted to the administrative remedy provided by subsection (b) above. His decision to bring suit before the Department of Labor's final determination was apparently due to his fear that the applicable time period within which he might bring this action might expire in the interim. In October, 1976, the Assistant Regional Administrator of the Office of Federal Contract Compliance Programs, Department of Labor, without mentioning the Veteran's Readjustment Act claim, determined that Diamond, "by refusing to hire [Wood], ha[d] violated its obligations under affirmative action provision of *The Vocational Rehabilitation Act of 1973*, 29 U.S.C. § 793." That Act, in relevant part, provides that:

(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with

the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(6) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

On January 3, 1977 the plaintiff was permitted to amend his complaint to include a second count relating to this latter statutory provision.

The matter presently before the Court is the defendants' motion to dismiss both counts of the complaint on the ground that neither states a claim upon which relief can be granted.

## I. THE VIETNAM ERA VETERAN'S READJUSTMENT ACT OF 1972 CLAIM.

■ Defendants maintain that there is no private cause of action under Section 503 of the Veteran's Readjustment Act. I find it unnecessary to reach that issue, however. Plaintiff does not allege that defendants breached Diamond's contract with the government by failing "to list . . . with the appropriate local employment service office all of its suitable employment openings" or by refusing to consider refer-

rals resulting from such listings. Rather, he alleges that the defendants breached their duty by failing to accord plaintiff a "job preference" and by applying an employment criterion which had a disparate impact on disabled veterans. I reluctantly conclude that, because of the meaning given to the requisite "special emphasis" by the other terms of Section 503, the scope of the defendants' duties under Diamond's contract did not include an obligation to afford the plaintiff a job preference or to refrain from applying a criterion having a disparate impact.

The Report of the Senate Committee on the Vietnam Era Veteran's Readjustment Act of 1972 indicates that Section 503 "is a logical extension of the President's Executive Order No. 11598 issued on June 16, 1971 . . . ."[1] That Order required "Government contracts . . . to contain assurances that the contractor . . shall, to the maximum extent feasible, list all of its suitable employment openings with the appropriate office of the state employment service system. . . ."[2] The Senate Report noted that the increase in listings as a result of this Order had not been as great as anticipated and that Section 503 was "intended to achieve more effectively the intent of the President's Executive Order". The "logical extension" referred to was the deletion of the phrase "to the maximum extent feasible", the addition of a requirement that each local employment office "give such veterans priority in referral to such employment openings" and the creation of an administrative remedy for violations of the duties imposed.

This view of Section 503 is consistent with the contemporaneous understanding of those charged with the responsibility of implementing that section. The implementing regulations specify a contract clause to be inserted in every federal contract over

$2,500. That clause provided only that "the contractor, to provide special emphasis to the employment of qualified disabled veterans and veterans of the Vietnam era, agrees that all suitable employment openings . . . shall be offered for listing at an appropriate local office of the State employment service system . . . and to provide such reports to such local office regarding employment openings and hires as may be required". 41 C.F.R. § 50–250.6. The contract clause goes on to explain that, while the duty imposed "shall involve . . the acceptance of referrals of veterans and non-veterans, the listing of employment openings does not require the hiring of any particular job applicant or from any particular group of job applicants".

■ In summary, I conclude that the scope of Section 503 of the Vietnam Era Veteran's Readjustment Act, as it existed prior to December 3, 1974,[3] was limited to assuring the listing of job openings with State employment agencies and to the preference of certain veterans in referrals by those agencies. It imposed no duties and created no rights with respect to the employer's decision to hire or not to hire. Accordingly, Count I of the complaint must be dismissed.

## II. THE REHABILITATION ACT OF 1973 CLAIM.

Section 503 of The Rehabilitation Act of 1973, which I shall refer to by its Code section number, Section 793, to avoid confusion with Section 503 of the Veterans Act, has been set forth above. A review of the implementing regulations is helpful by way of supplement. Section 60–741.4 of those regulations provides in part:

Each agency and each contractor and subcontractor shall include the following affirmative action clause in each of its covered government contracts or subcon-

---

1. 1972 U.S.Code Cong. & Admin.News p. 4376.

2. 3 C.F.R., 1971–1975 Comp. pp. 565–6.

3. On December 3, 1974, Congress amended Section 503 by replacing the phrase "special

emphasis" with language imposing a duty to take "affirmative action to employ and advance in employment" certain veterans. The statute, as amended, states that the duty to list jobs is now in addition to these "affirmative action" obligations. 38 U.S.C. § 2012.

tracts (and modifications, renewals, or extensions thereof if not included in the original contract).

## AFFIRMATIVE ACTION FOR HANDICAPPED WORKERS

(a) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment, upgrading, demotion or transfer, recruitment, advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

(b) The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Act.

(c) In the event of the contractor's non-compliance with the requirements of this clause, actions for non-compliance may be taken in accordance with the rules, regulations and relevant orders of the Secretary of Labor issued pursuant to the Act.

41 C.F.R. § 60–741.4.

Section 60–741.26 specifies the procedures which are to be followed when a complaint is filed with the Labor Department under subsection (b) of Section 793. It provides that the Labor Department "shall institute a prompt investigation of each complaint" and develop "a complete case record" which is to include "recommended findings and resolution". If the investigation shows no violation or if the Agency decides not to initiate "administrative or legal proceedings against the contractor," the complainant is notified and, within thirty days, may request a review by the Agency. If the investigation shows a violation, "conciliation and persuasion" is attempted. If these ef-

forts fail, the contractor is entitled to a formal hearing before any sanctions may be imposed.

Section 60–741.28 provides:

(a) *General.* In every case where any complaint investigation indicates the existence of a violation of the affirmative action clause or these regulations, the matter should be resolved by informal means, including conciliation, and persuasion, whenever possible. This will also include establishing a corrective action program in accordance with § 60–741.-26(g)(2). Where the apparent violation is not resolved by informal means, the Director or the agency shall proceed in accordance with the enforcement procedures contained in this Part.

(b) *Judicial enforcement.* In addition to the administrative remedies set forth herein, the Director may, within the limitations of applicable law, seek appropriate judicial action to enforce the contractual provisions set forth in § 60–741.4 including appropriate injunctive relief.

The administrative remedies referred to include the withholding of progress payments, contract termination, and "debarment . . . from receiving future contracts". § 60–741.28(c)–(e).

■ The question for resolution is whether a private cause of action should be implied for violations of Section 793 and the implementing regulations. The parties agree that the standards to be applied in answering this question are found in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The Supreme Court there identified four "relevant" factors:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally,

is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

. . . . .

422 U.S. at 78, 95 S.Ct. at 2088.

Because I must accept plaintiff's allegation that he is a "qualified handicapped individual" as defined in 29 U.S.C. § 706(6), the proposition that he is "one of the class for whose *especial* benefit" Section 793 was enacted seems self-evident. *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200, 14 F.E.P. Cases 1752 (N.D.Tex.1977).

As a sister court in this Circuit has observed, the legislative history is not helpful in determining whether or not Congress contemplated an independent, private cause of action under Section 793. *Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809 (E.D.Pa.1977). While plaintiff has suggested that the legislative history concerning a companion provision, Section 794,[4] is of significance in determining this issue, I conclude that it is not. After describing the contemplated administrative methods of implementing Section 794, the Senate Report expresses the view that "[t]his approach to implementation of section [794] . . . would ensure administrative due process . . ., provide for administrative consistency within the Federal government as well as relative ease of implementation, and permit a judicial remedy through a private action". 1974 U.S.Code Cong. & Admin.News p. 6391. This reference to a judicial remedy through a private action is said to be of significance because, the Senate Report also observes that "[i]t is intended that sections [793 and 794] . . . be administered in such a manner that a consistent, uniform, and effective Federal

approach to discrimination against handicapped persons would result." *Id.* at 6391. As will appear from the following discussion, however, there are important distinctions between the approach taken by Congress in Sections 793 and 794 and they have different legislative histories.[5] Moreover, as the Seventh Circuit Court of Appeals has observed, the Committee's reference to a private judicial remedy, when read in context, suggests "judicial review of an administrative proceeding as contradistinct from an independent cause of action in federal court . . . ." *Lloyd v. Regional Trans. Authority*, 548 F.2d 1277, 1286 (7th Cir. 1977). This kind of judicial review is quite a different remedy than the one plaintiff asks this Court to imply from Section 793. I conclude, therefore, that the recited legislative history of Section 794 is of no aid in determining whether a private cause of action should be implied from Section 793.

Nor is the fourth factor mentioned in the *Cort* decision helpful in this context. Implication of a federal remedy under Section 793 would not involve an inappropriate intrusion into an area of peculiar State interest and concern.

In a situation of this kind, I believe the crucial inquiry relates to the third *Cort* factor—would an independent private cause of action be consistent with the underlying purposes of the legislative scheme? This question is not answered simply by pointing out that handicapped persons are the intended beneficiaries of the Act and that implication of private cause of action would provide such individuals with an additional remedy. We must inquire further to determine whether an independent private cause of action would be consistent with the overall legislative scheme including the manner in which Congress provided its goals should be furthered and its legislation enforced.

---

4. "No otherwise qualified handicapped individual in the United States, . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance".

5. Section 794 had different legislative antecedents for example. See review of legislative history in *Lloyd v. Regional Trans. Authority*, 548 F.2d 1277 (7th Cir. 1977).

Before turning to the elements of legislative scheme it is helpful to recognize what the practical significance of implying an independent private cause of action would be insofar as the administration of the Act is concerned. The question before this Court does not involve the issue of whether there will be judicial control of the administration of the Act or whether there will be judicial enforcement of sanctions upon contractors who have violated the Act. Section 793 and the regulations implementing it expressly contemplate that the agency may seek judicial enforcement of sanctions and, as the *Lloyd* opinion suggests, there may well be judicial review of agency determinations for or against a complainant.[6]

Similarly the issue before the Court does not involve the question of whether the agency will be permitted to define the somewhat nebulous terms of the statute[7] and develop a uniform body of national law by applying those definitions to individual cases. If an independent private cause of action is implied, it is to be expected that the federal courts, after determining that they have jurisdiction to entertain such a case, will invoke the doctrine of primary jurisdiction, to stay the proceedings before them, and give great deference to any agency determinations thereafter made. The *Drennon* court, which implied a private cause of action, recognized this fact. *Drennon v. Philadelphia General Hospital, supra.* While this does not mean that the role of the agency would be precisely the same as it would be if no private cause of action is implied, it suggests that the weight placed by the defendants on the desirability of uniformity is exaggerated.

Insofar as the administration of the Act is concerned, it seems to me that the principal differences between implying an independent cause of action, while at the same time recognizing primary jurisdiction in the agency, and refusing to imply such a cause of action relate (1) to whether contractors will be exposed to the burdens of *de novo* litigation, and (2) whether the remedies fashioned in cases of violations will be limited to those which the agency, in its discretion, deems appropriate. The importance of these differences becomes evident when the legislative scheme is analyzed.

■ Section 793 does not make discrimination against handicapped persons in the private sector illegal. Rather, it requires that an "affirmative action" covenant be inserted in all government contracts which exceed the modest amount of $2,500. Any contractor who chooses to enter such a contract is put on notice by Congress that, in the event of a violation, the Department of Labor will take "such action . . . as the facts and circumstances [determined by the Department] warrant, consistent with the terms of such contract and the laws and regulations applicable thereto". This Congressional approach, in my judgment, suggests that the duties imposed are to be duties assumed by contract and that the exposure of the contractor is to be limited to the terms of his contract and of any statutes and regulations applicable thereto. Given this approach, in the absence of any legislative history so suggesting, I conclude that a court should not infer an intent to subject contractors to independent federal actions at the instance of individuals and to remedies other than those determined appropriate by the agency in accordance with the contract and the rules, regulations, and relevant orders of the Secretary.

Also of importance is the emphasis in the legislative scheme on the resolutions of disputes by conciliations and persuasion. I think it apparent that the existence of independent federal litigation, even if stayed during the administrative process, and the possibility of relief independently fashioned by a federal court is likely to impair the

---

6. I express no view on this issue.

7. The Act defines "handicapped individual" for purposes of Section 793, for example, as "any person who (A) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (B) has a record of such an impairment, or (C) is regarded as having such an impairment". 29 U.S.C. § 706(6).

effectiveness of the administrative conciliation process. Indeed, this case offers an excellent example of the potential mischief. After the Department of Labor found Diamond to be in violation of Section 793, it initiated conciliation efforts. The record reflects that the principal reason these efforts have been unsuccessful is a dispute between the parties as to whether recovery for "mental anguish, pain and suffering" is available in this proceeding.

Because I find independent federal litigation at the initiative of private individuals to be inconsistent with the legislative scheme fashioned by Congress, I conclude that no private right of action should be implied under Section 793. This conclusion is supported by the reasoning of the court in *Farmer v. Philadelphia Electric Company*, 329 F.2d 3 (3rd Cir. 1964), which addressed a closely analogous question.[8] While *Farmer* was a pre-*Cort* case, I believe that the court's analysis is consistent with the teachings of *Cort* and that our Court of Appeals would reach the same result today.

Defendants' motion to dismiss Count II will also be granted.

---

8. The *Farmer* case involved the question of whether a private cause of action should be implied under an Executive Order requiring that government contracts include an anti-discrimination clause. The only cases which have directly addressed the question of whether there is a private right of action under Section 793 have reached different results. *See Rogers v. Frito-Lay, Inc.,* 433 F.Supp. 200, 14 F.E.P. Cases 1752 (N.D.Tex.1977) (refusing to imply a private cause of action) and *Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809 (E.D. Pa.1977) (implying a private right of action). For a law review analysis reaching the same conclusion as the *Rogers* court, see *Wright, Equal Treatment of the Handicapped by Federal Contractors,* 26 Emory L.J. 65 (1977).