Phyllis **CHAPLIN, on behalf of herself and all others similarly situated; and Epilepsy Foundation of America, Plaintiffs,**

v.

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.; Charles Luce, Individually and in his capacity as Chairman of the Board of Trustees of Consolidated Edison Company of New York, Inc., Arthur Hauspurg, Individually and in his capacity as President of Consolidated Edison Company of New York, Inc.; Regina Frederickson, Individually and in her capacity as Director of Personnel of Consolidated Edison Company of New York, Inc.; Thomas M. O'Sullivan, Individually and in his capacity as Assistant Director of Personnel of Consolidated Edison Company of New York, Inc.; John Holbrook, Individually and in his capacity as a Personnel Representative of Consolidated Edison Company of New York, Inc.; Herman Halpern, Individually and in his capacity as Medical Director of Consolidated Edison Company of New York, Inc.; and Jane Doctor and John Doctor, Individually and in their capacities as unknown and unnamed physicians of the Medical Department of Consolidated Edison Company of New York, Inc., Defendants.**

No. 79 Civ. 730 (MEL).

United States District Court,
S. D. New York.

Jan. 18, 1980.

Kalman Finkel, The Legal Aid Society, Civ. Div., New York City, John E. Kirklin, Director of Litigation, The Legal Aid Society Civil Appeals and Law Reform Unit, New York City, Timothy M. Cook, New York City, of counsel, Morton B. Dicker, The Legal Aid Society, New York City, Gale Fieldman, New York City, of counsel, for plaintiffs.

Ernest J. Williams, New York City, for defendants; Barry S. Goldstein, Sheila Solomon Rosenrauch, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., New York City, for United States, amicus curiae; Jane E. Bloom, Dennison Young, Jr., Asst. U. S. Attys., New York City, Stephen L. Mikochik, Lucy L. Thomson, Attys., U. S. Dept. of Justice, Carin Ann Clauss, Sol., James D. Henry, Associate Sol., David Drachsler, Washington, D. C., Counsel for Equal Opportunity Programs, Lois G. Williams, Deputy Associate Sol., Gregory O'Duden, Atty., U. S. Dept. of Labor, Albert Hamlin, Asst. Gen. Counsel for Civil Rights, Washington D. C., Sandra Griffith, Atty., U. S. Dept. of HEW, of counsel.

LASKER, District Judge.

Phyllis Chaplin was diagnosed as an epileptic in 1965, and since has had her condition controlled by anti-epileptic medications. Individually and as a representa-

tive of a proposed class, Chaplin, together with the Epilepsy Foundation of America (the Foundation), sue Consolidated Edison Company of New York, Inc. (Con Ed), and certain of its officials and physicians in its Medical Department under sections 503 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 793, 794, alleging that Con Ed's hiring policies discriminate against qualified job applicants who are epilepsy sufferers. Con Ed moves to dismiss the complaint on the grounds that section 503 does not provide a private cause of action, that Chaplin has failed to exhaust her administrative remedies, and that the Foundation lacks standing to sue.

## I. Implication of a Private Right of Action Under Section 503(a)

The statutory scheme involved here consists of three subsections of the Rehabilitation Act of 1973, §§ 503(a), 503(b) and 504.

Section 503(a), 29 U.S.C. § 793(a), requires that certain federal contracts contain a clause requiring the contractor to take affirmative action to hire handicapped persons:

"Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal proverty [sic] and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title. . . ."

Section 503(b), 29 U.S.C. § 793(b), provides for Department of Labor investigation of complaints filed by handicapped individuals of violations of the statute:

"If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individuals may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto."

Section 504, 29 U.S.C. § 794, prohibits discrimination against handicapped individuals under programs receiving federal financial aid:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. . . ."

The question whether section 503(a) provides a private cause of action is one of first impression in this circuit, nor has the issue been addressed by any other circuit courts. Those district courts that have decided the issue are divided on its resolution.[1]

---

1. Compare Hart v. County of Alameda, No. C–79–0091, Slip op. at 12 (N.D.Cal. September 5, 1979) (implying a private cause of action under section 503(a)); Simon v. St. Louis County, No. 77–1140 C(4), Slip op. at 2 (E.D.Mo. January 31, 1978) (same); Duran v. City of Tampa, 430 F.Supp. 75, 78 (M.D.Fla. 1977) (same); Drennon v. Philadelphia General Hosp., 428 F.Supp. 809, 814 (E.D.Pa.1977) (same), with Miglets v. Erie Lackawanna Ry. Co., 19 EPD P9191, 19 FEP Cases, 379, 379 (N.D.Ohio February 28, 1979) (no private cause of action under section 503 implied); Anderson v. Erie Lackawanna Ry. Co., 468 F.Supp. 934, 940 (N.D.Ohio 1979) (same); Wood v. Diamond

State Telephone Co., 440 F.Supp. 1003, 1010 (D.Del.1977) (same); Moon v. Roadway Express, Inc., 439 F.Supp. 1308, 1310 (N.D.Ga. 1977) (same); Rogers v. Frito-Lay, Inc., 433 F.Supp. 200, 202 (N.D.Tex.1977) (same).

Con Ed's statement in its Memorandum of Law that "Each court which [sic] considered the question reached the same conclusion, that no private right of action should be implied under section 503 of the Act" (p. 11) is inaccurate in light of the three district court decisions rendered by the time the Memorandum was filed that unambiguously held to the contrary, one of which was discussed later in the Memorandum as "the single case which [sic] found a cause of

The parties agree that since section 503(a) does not expressly provide a private cause of action, the analysis outlined in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), controls in determining whether an implied cause of action exists.[2]

■ *Cort v. Ash* specified four factors as relevant to the determination whether a private cause of action should be implied under a statute not expressly providing one.

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' . . . —that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"[3]

*Id.* (citations omitted) (emphasis in original).

### A. *Especial Benefit*

■ Even those courts that have refused to imply a right of action under section 503(a) acknowledge that the statute was enacted to benefit handicapped persons.

*Anderson v. Erie Lackawanna Ry. Co.*, 468 F.Supp. 934, 936 (N.D.Ohio 1979); *Wood v. Diamond State Tel. Co.*, 440 F.Supp. 1003, 1008 (D.Del.1977); *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200, 202 (N.D.Tex.1977); *see Moon v. Roadway Express, Inc.*, 439 F.Supp. 1308, 1309 (N.D.Ga.1977).[4] That Phyllis Chaplin and other epileptics are "handicapped" within the meaning of the statute is not disputed. In sum, Chaplin and the members of the class she represents belong to a "class for whose *especial* benefit the statute was enacted."

### B. *Legislative Intent*

The legislative history of section 503 is silent on whether Congress intended to create or deny a private right of action under the section. *See Hart v. County of Alameda*, No. C–79–0091, Slip op. at 13 (N.D.Cal. September 5, 1979); *Wood v. Diamond State Tel. Co., supra*, 440 F.Supp. 1003, 1008 (D.Del.1977); *Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809, 815 (E.D.Pa. 1977). The only other expressions of Congressional intent to which attention has been directed are (1) the failure of Congress to amend Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17, to prohibit discrimination against handicapped persons, (2) the legislative history of the Rehabilitation Act Amendments of 1974, Pub.L. No. 93–516, 88 Stat. 1617 (1974), indicating Congress' intent that section 503 be administered uniformly with

action to exist under section 503" (p. 19) (emphasis added).

2. Con Ed's Memorandum of Law is silent on the explicit question whether the *Cort v. Ash* method applies here, and does not analyze each of the four factors seriatim. However, Con Ed's arguments in opposition to implication rely mainly on those cases that have held, applying *Cort*, that implication is unwarranted. Therefore, we conclude that Con Ed does not dispute the application of *Cort*.

3. The continued viability of the *Cort* approach, which the Supreme Court reaffirmed last term in *Cannon v. University of Chicago*, 441 U.S. 677, 688–709, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) appears beyond doubt. The Court's failure in *Tramsamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, —— U.S. ——, 100 S.Ct. 242, 62 L.Ed.2d 146 (November 13, 1979), to exam-

ine each of the four *Cort* factors is attributable to its finding that its determination that Congress did not intend to create a private cause of action disposed of the question. *Id.* at ——, 100 S.Ct. 242. Consequently, that case does not raise any doubt as to the continued viability of *Cort*.

4. The only other case holding that no private cause of action was implied by section 503(a) appears to be *Miglets v. Erie Lackawanna Ry. Co.*, 19 EPD P9191, 19 FEP Cases 379 (N.D. Ohio February 28, 1979), which relied on the reasoning in *Anderson v. Erie Lackawanna Ry. Co.*, 468 F.Supp. 934 (N.D.Ohio 1979), and therefore concurred in the unanimity that the first *Cort* factor resolves in favor of implication.

section 504, and (3) the legislative history of the 1978 amendments to the Rehabilitation Act.

### 1. Failure to Amend Title VII

First, two courts have found Congress' failure to adopt proposed amendments to Title VII that would have extended that statute's reach to handicapped individuals to be probative of its intent not to provide a private right of action to handicapped persons under section 503(a). *Moon v. Roadway Express, Inc., supra,* 439 F.Supp. 1308, 1309 (N.D.Ga.1977); *Rogers v. Frito-Lay, Inc., supra,* 433 F.Supp. 200, 202 (N.D.Tex. 1977). The conclusion appears dubious. Congress' failure to adopt an amendment may lead to more than one valid inference of its intent. Here, for example, Congress may not have wished to extend the prohibition against discrimination against the handicapped found in sections 503 and 504 beyond the Rehabilitation Act's application to federal contractors and recipients of federal assistance, or it may have believed that it had already created a private right of action for handicapped persons under the Rehabilitation Act, and that the amendments were consequently unnecessary. In any event, the failure to amend Title VII to include handicapped persons is too slender a reed on which to conclude whether it intended section 503(a) to establish a private right of action.

### 2. Uniformity of Sections 503 and 504

Second, at least one court has found illuminating the statement contained in the report of the Senate Labor and Public Welfare Committee on the Rehabilitation Act Amendments of 1974

"that sections 503 and 504 be administered in such a manner that a consistent, uniform, and effective Federal approach to discrimination against handicapped persons would result."

S.Rep. No. 93–1297, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad-

min.News, pp. 6373, 6391. The court in *Hart v. County of Alameda, supra,* No. C–79–0091, Slip op. at 13 (N.D.Cal. September 5, 1979), concluded from this language that

"In light of the rather express congressional intent that a private remedy be available to enforce Section 504, the emphasis on uniformity suggests that Congress contemplated the scheme with respect to section 503."

However, uniformity does not necessarily mean equivalence in this context. An approach to section 503(a) that is consistent and uniform with that taken to section 504 (under which section a private right of action has been generally acknowledged [5]) does not require implication of a private right of action under section 503(a). As the court reasoned in *Anderson v. Erie Lackawanna Ry. Co., supra,* 468 F.Supp. 934, 939 (N.D.Ohio 1979),

"To administer sections 503 and 504 'in such a manner that a consistent, uniform, and effective Federal approach to discrimination against handicapped persons would result,' S.R. 93–1297, does not require the finding of a private action under section 503. The enforcement of section 503 is entrusted to the Department of Labor whereas the enforcement of section 504 is a responsibility of the Secretary of Health, Education and Welfare. . . . [W]hen Congress stated that sections 503 and 504 were to be 'consistent' and 'uniform,' Congress meant that the two responsible agencies were not to work at cross purposes or to duplicate each other's efforts, not that identical methods of enforcement were envisioned."

Support for this interpretation of the Committee statement is provided by its surrounding context, which indicates a very different concern from any relating to implication of a private right of action under section 503. The language following the quoted portion states:

---

**5.** *See, e. g., Campbell v. Kruse,* 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977); *Leary v. Crapsey,* 566 F.2d 863, 865 (2d Cir. 1977); *Kamp-* *meier v. Nyquist,* 553 F.2d 296, 299 (2d Cir. 1977); *Lloyd v. Regional Transp. Auth.,* 548 F.2d 1277, 1287 (7th Cir. 1977).

"Thus, Federal agencies and departments should cooperate in developing standards and policies so that there is a uniform, consistent Federal approach to these sections."

and goes on to instruct the Department of Labor and the Department of Health, Education and Welfare to coordinate their efforts to enforce these sections. It thus appears that the command that sections 503 and 504 be administered uniformly may only indicate Congress' concern with the potential for conflicting regulations promulgated by the different agencies responsible for enforcing the statute, and is not conclusive on the question whether Congress intended to create or deny a private right of action under § 503(a).

### 3. 1978 Amendments to the Rehabilitation Act

However, the third item of Congressional intent outside the legislative history of section 503, is more compelling. In 1978, Congress amended the Rehabilitation Act (29 U.S.C. § 794a(b)) to provide for an award of attorneys fees to successful litigants under

that title. That Congress meant this provision to apply to litigants bringing private suits under section 503 is made clear by the Senate committee report:

"The committee believes that the rights extended to handicapped individuals under Title V . . . are, and will remain in need of constant vigilance by handicapped individuals to assure compliance, and the availability of attorney's fees should assist in vindicating private rights of action in the case of section 502 *and 503* cases. . . ." (emphasis added)

S.Rep. No. 95–890, 95th Cong., 2d Sess. 19 (1978).[6]

The Supreme Court has recently indicated that a legislative amendment permitting an attorneys fees award under an existing statute is relevant to the determination whether, under the second *Cort* factor, Congress intended to create a private cause of action under that statute. *Cannon v. University of Chicago*, 441 U.S. 677, 698, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Consequently, Congress' provision for attorneys

---

**6.** Plaintiffs cite other legislative history of the 1978 amendments that indicates that the attorneys fees award provision was intended to facilitate private rights of action under Title V.

> "[W]e have not provided the means by which such private rights of action are meaningful. This amendment providing attorneys' fees . . . will go a long way toward assisting long neglected Americans—handicapped individuals—in their full and equal share of the rights to which they are entitled. . . . Private enforcement of these Title V rights is an important and necessary aspect of assuring that these rights are vindicated and enforcement is uniform. The availability of attorneys' fees should assist substantially in this respect."

124 Cong.Rec. S1559, 15593 (September 20, 1978) (remarks of Sen. Cranston).

> "The amendment adopted by the Committee would help assure that handicapped individuals will have access to the judicial process in order to assert their rights under Title V."

124 Cong.Rec. S19000 (October 14, 1978) (remarks of Sen. Stafford). However, these statements could be interpreted to mean that Congress had intended to create private rights of action in sections of Title V other than section 503(a). In particular, these statements may refer to the implied private cause of action under section 504, which is not disputed here,

and which more clearly provides a private cause of action. *See, e. g., Campbell v. Kruse,* 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977); *Leary v. Crapsey,* 566 F.2d 863, 865 (2d Cir. 1977); *Kampmeier v. Nyquist,* 553 F.2d 296, 299 (2d Cir. 1977); *Lloyd v. Regional Transp. Auth.,* 548 F.2d 1277, 1287 (7th Cir. 1977). Similarly, the indications in the legislative history issued by the House of Representatives on an earlier version of the bill that the amendments providing for an award of attorneys fees would apply "in any action or proceeding to enforce sections 501, 503 or 504 of the act," H.R.Rep. No. 95–1149, 95th Cong., 2d Sess. 21, *reprinted in* [1978] U.S.Code Cong. & Admin. News pp. 7312, 7332; *accord* H.R.Rep. No. 95–1780, 95th Cong., 2d Sess. 93, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 7375, 7404, do not necessarily lead to the conclusion that Congress thought it had created a private cause of action under section 503(a). The references to an "action or proceeding" may apply to those actions or proceedings brought under subsection (b) of section 503, which directs aggrieved handicapped persons to initiate actions at the Department of Labor. Because of their possible reference to subsection (b) of section 503, these statements provide no certainty as to the intent of Congress with regard to subsection (a).

fees awards, which it intended to apply to private suits under section 503, weighs in favor of implication. *See Hart v. County of Alameda, supra,* No. C–79–0091, Slip op. at 15 (N.D.Cal. September 5, 1979).

Thus, the available indicators point to the conclusion that Congress intended to create a private cause of action under section 503(a), and consequently the second element of the *Cort* analysis resolves in favor of implication.

*C. Purpose of the Legislative Scheme*

The third *Cort* factor requires an examination of the purpose of the statutory scheme. The Court emphasized this point in *Cannon*:

"a private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute."

441 U.S. 677, 703, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979) (footnote omitted).

One of the several legislative purposes of the Rehabilitation Act of 1973, as expressly stated by Congress in the statute itself, was to

"promote and expand employment opportunities in the public and private sectors for handicapped individuals and to place such individuals in employment;"

29 U.S.C. § 701(8). It appears self-evident that the existence of a private right of suit against employers will encourage their compliance with the statute's dictates and thereby advance the stated goal of non-discrimination in the employment of the handicapped.

The Supreme Court's reasoning in *Cannon* is particularly germane here. In *Cannon*, the Court decided that under the third *Cort* factor, implication of a private right of action under section 901(a) of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) would advance that statute's purpose of protecting individuals from sex discrimination. Finding that the statutory remedy of termination of federal financial support would not be an effective means of accomplishing this purpose in cases of isolated violations, the Court said:

"In that situation, the violation might be remedied more efficiently by an order requiring an institution to accept an applicant who had been improperly excluded. Moreover, in that kind of situation it makes little sense to impose on an individual, whose only interest is in obtaining a benefit for herself, or on HEW, the burden of demonstrating that an institution's practices are so pervasively discriminatory that a complete cut-off of federal funding is appropriate. The award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is fully consistent with—and in some cases even necessary to—the orderly enforcement of the statute."

441 U.S. 677, 705, 99 S.Ct. 1946, 1961, 60 L.Ed.2d 560 (1979) (footnotes omitted).

Similarly here, the central purpose of the statute as evidenced by the legislative history was to protect handicapped individuals from discrimination. *See* 119 Cong.Rec. 6145 (1973) (remarks of Sen. Humphrey). Yet, without a private right of action the only other remedies available for the enforcement of section 503(a) are those triggered by the administrative mechanism authorized by section 503(b), which provides for Department of Labor investigation of individual complaints. The regulations issued by the Department of Labor prescribe for violation of section 503 the withholding of payments due on a contract, the termination of a contract, and the debarment from receiving further contracts with the federal government.[7] 41 C.F.R. § 60–741.28 (1979).

---

**7.** The regulations also refer to a remedy of "judicial enforcement":

"In addition to the administrative remedies set forth herein, the Director may, within the limitations of applicable law, seek appropriate judicial action to enforce the contractual provisions set forth in § 60–741.4 including appropriate injunctive relief."

41 C.F.R. § 60.741.28(b) (1979). Although this language is somewhat ambiguous, *see Hart v.*

For the reasons stated in *Cannon* these remedies are not effective by themselves to accomplish the purpose of redressing discrimination in isolated cases.

Since implication appears consistent with one purpose of the statute, the inquiry narrows to whether it is inconsistent with any of its other purposes. Some courts have found that implication is inconsistent with the conciliation process authorized by section 503(b) and administered by the Department of Labor through the regulations it has issued, *see* 41 C.F.R. §§ 60–741.1 *et seq.* (1979). *Anderson v. Erie Lackawanna Ry. Co., supra,* 468 F.Supp. 934, 938–39 (N.D. Ohio 1979); *Wood v. Diamond State Tel. Co., supra,* 440 F.Supp. 1003, 1009–10 (D.Del.1977); *Rogers v. Frito-Lay, Inc., supra,* 433 F.Supp. 200, 203 (N.D.Tex.1977). However, the Department of Labor argues in its amicus brief in this case that the availability of a private right of action would not interfere with its conciliation process, but would, to the contrary, facilitate it, because the "specter of litigation would have a sobering effect on the parties involved." In *Cannon,* the Supreme Court indicated that such an expression by an administrative agency, if reached in advance of trial, is entitled to judicial deference. 441 U.S. 677, 687 n. 8, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). In light of the position of the Department of Labor, clearly a rational view, the claimed potential for interference with the work of the administrative agency is not a valid reason for finding no implied private right of action.

Furthermore, in the light of the remarks in *Cannon* quoted below, the remedy provided by section 503(b) of resort to the Department of Labor is, in our view, not intended to be exclusive, although before *Cannon* was decided, other courts found it to be so. *Anderson v. Erie Lackawanna Ry. Co., supra,* 468 F.Supp. 934, 937 (N.D.Ohio 1979); *Moon v. Roadway Express, Inc., supra,* 439 F.Supp. 1308, 1310 (N.D.Ga.1977). Once again, in *Cannon,* the Supreme Court

has addressed this issue in a similar context. There the Court stated:

"True, this Court has sometimes refused to imply private rights of action where administrative or like remedies are expressly available. . . . But it has never withheld a private remedy where the statute explicitly confers a benefit on a class of persons and where it does not assure those persons the ability to activate and participate in the administrative process contemplated by the statute. . . As the Government itself points out in this case, Title IX not only does not provide such a mechanism, but the complaint procedure adopted by HEW does not allow the complainant to participate in the investigation or subsequent enforcement proceedings. Moreover, even if those proceedings result in a finding of a violation, a resulting voluntary compliance agreement need not include relief for the complainant. . . . Furthermore, the agency may simply decide not to investigate—a decision that often will be based on a lack of enforcement resources, rather than on any conclusion on the merits of the complaint. . . . In that case, if no private remedy exists, the complainant is relegated to a suit under the Administrative Procedure Act to compel the agency to investigate and cut off funds. . . . But surely this alternative is far more disruptive of HEW's efforts efficiently to allocate its enforcement resources under Title IX than a private suit against the recipient of federal aid could ever be."

441 U.S. 677, 707 n. 41, 99 S.Ct. 1946, 1963, 60 L.Ed.2d 560 (May 14, 1979). (citations omitted) Similarly, here, the statute not only fails to guarantee the participation of the complainant in the administrative process, but the regulations promulgated by the Department of Labor make no provision for such participation. 41 C.F.R. § 60–741.-26, .28, .29 (1979).

*County of Alameda,* No. C–79–0091, Slip op. at n. 12 (N.D.Cal. September 5, 1979), it is nevertheless clear that it does not provide an unequivocal remedy or avenue of relief for private

litigants seeking redress for isolated instances of discrimination. *See Anderson v. Erie Lacka-.wanna Ry. Co.,* 468 F.Supp. 934, 938 (N.D.Ohio 1979).

Where, as here the statute confers a benefit on handicapped persons without assuring them "the ability to activate and participate in the administrative process," *Cannon* teaches that a private remedy under 503(a) should not be withheld. Moreover, since no remedy has been provided to handicapped individuals by section 503(b), that section cannot be deemed to have provided an exclusive remedy that would preclude implication of a private right of action under section 503(a).

In sum, since implication is consistent with the statute's purpose of terminating discrimination against the handicapped and does not appear inconsistent with any other of the statute's purposes, the third *Cort* factor resolves in favor of implication.[8]

### D. State Law

Little time need be spent on the final criterion specified by *Cort* (whether the subject in question is an area traditionally relegated to state law) since "[n]o such problem is raised by a prohibition against invidious discrimination of any sort . . ." *Cannon, supra*, 441 U.S. 677, 708, 99 S.Ct. 1946, 1963, 60 L.Ed.2d 560 (1979).[9] More-

over, since the statutory basis for the requirement of affirmative action for the employment of handicapped persons is the award of a federal contract, the subject is by definition not governed by state law.

\*     \*     \*     \*     \*     \*

Since all of the factors articulated in *Cort* favor the implication of a private right to sue, we conclude that such a right exists under 503(a) in favor of these plaintiffs.

### II. Exhaustion of Administrative Remedies

■ Con Ed argues that plaintiffs[10] are required to exhaust their administrative remedies under sections 503 and 504 and have failed to do so.

As to the section 503 claim, Con Ed contends that exhaustion of the administrative process provided by the Department of Labor is a prerequisite to this suit, or in the alternative, that the doctrine of primary jurisdiction applies and the judicial determination of Chaplin's claim should be deferred pending referral to the Department of Labor. Chaplin answers that since she filed

---

**8.** Several courts have found that because section 503 requires affirmative action to hire handicapped persons and does not in those words prohibit discrimination, a private right of action under that statute for discrimination against handicapped individuals is not implied. *Wood v. Diamond State Tel. Co.*, 440 F.Supp. 1003, 1009 (D.Del.1977); *Moon v. Roadway Express, Inc.*, 439 F.Supp. 1308, 1309 (N.D.Ga. 1977); *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200, 202 (N.D.Tex.1977). However, it is questionable whether such a conclusion necessarily follows. Affirmative action by its nature is a remedy for past discriminatory practices. The regulations issued by the Department of Labor require the inclusion of language in the federal contracts that the contractor "will not discriminate" against handicapped employees or applicants. 41 C.F.R. § 60.741.4 (1979). Moreover, the legislative history of the section indicates that the intent was to eliminate employment discrimination against the handicapped. 119 Cong.Rec. 6145 (1973) (remarks of Sen. Humphrey).

**9.** New York law prohibits discrimination against the handicapped in N.Y.Exec. Law § 296 (McKinney Supp.1979) which applies to the disabled, and in N.Y.Civ. Rights Law § 47–a (McKinney Supp.1979–1980), which applies to

the blind and deaf. Since N.Y.Exec.Law § 296 did not apply to the disabled until amended in 1974, and N.Y.Civ. Rights Law § 47–a was not effective until 1976, it can hardly be argued that New York law has traditionally regulated this area.

**10.** Con Ed argues in its memorandum that "Plaintiffs must exhaust their administrative remedies" under sections 503 and 504 (p. 2). However, the parties address only those steps taken by Chaplin with regard to administrative exhaustion and do not distinguish the status of the Foundation's claims. Accordingly, only the claim that Chaplin failed to exhaust her administrative remedies is treated here. However, given Con Ed's position with respect to the Department of Labor's investigation of Chaplin's complaint, distinguishing the status of Chaplin's section 503 claim from the Foundation's claim under that section appears pointless. Similarly, with regard to exhaustion under section 504 by the Foundation, given HEW's determination that it lacks jurisdiction over Chaplin's complaint because Con Ed receives no federal funds through HEW, to require the Foundation to direct its complaint to HEW would be futile.

with the Department of Labor in December 1978 and that agency's investigation failed to proceed because Con Ed refused to cooperate, she has exhausted her administrative remedies.

A stay of the section 503 claim pending administrative exhaustion is denied for the following reasons. First, *Cannon* establishes that administrative exhaustion is not appropriately required here. As discussed, above, the *Cannon* Court held that when the administrative regulations do not assure the participation of individuals nor individual relief, implication of a private right of action is appropriate. The Court went on to note:

> "For these same reasons, we are not persuaded that individual suits are inappropriate in advance of exhaustion of administrative remedies. Because the individual complainants cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time, it makes little sense to require exhaustion."

441 U.S. 677–, 707 n. 41, 99 S.Ct. 1946, 1963, 60 L.Ed.2d 560 (1979) (citation omitted).[11]

Second, even were exhaustion required, to order Chaplin to direct her grievance further to the Department of Labor would be futile given Con Ed's position. It thus appears that Chaplin has in any event exhausted what remedies are available to her. *See Eisen v. Eastman,* 421 F.2d 560, 569 (2d Cir. 1969), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970). Even an order to Con Ed to cooperate with the Department of Labor would not render further administrative proceedings meaningful, because, as just noted, the Department of Labor regulations make no provision for participation in their proceedings by the affected employee nor for individual relief. Furthermore, in its brief the Department of

Labor has submitted data indicating the increasing backlog faced by the office of over two thousand pending section 503 claims (pp. 27–28). Therefore, an order that Con Ed cooperate with the Department of Labor investigation and staying this action pending the outcome of that investigation would only add to the delay already attending the resolution of this dispute without assuring its final disposition.

As to the section 504 claim, Con Ed again argues that exhaustion of administrative remedies is required and that those remedies have not been exhausted. However, as Con Ed conceded at oral argument, since HEW has determined that it had no jurisdiction over the complaint Chaplin filed with that agency because Con Ed received no funds through HEW, Chaplin has exhausted all administrative remedies available under section 504. It is unnecessary, therefore, to decide whether, as Con Ed argues, exhaustion of administrative remedies is a prerequisite to suit.[12]

### III. The Foundation's Standing to Sue

Con Ed's final contention is that the Foundation lacks standing to sue because it has failed to allege the requisite injury.

■■ An organization's standing to sue may be derived from allegations of injury to itself or to its members. *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Sierra Club v. Morton,* 405 U.S. 727, 735–41, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *National Ass'n for the Advancement of Colored People v. Alabama,* 357 U.S. 449, 459–60, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). As *Warth v. Seldin* states:

11. For the same reasons the doctrine of primary jurisdiction applied in a section 503 case in *Drennon v. Philadelphia General Hosp.,* 428 F.Supp. 809, 818 (E.D.Pa.1977), appears inappropriate.

12. Although the question whether exhaustion of administrative remedies is required under section 504 is not reached, it appears that for

the same reasons as those discussed with regard to section 503, no such requirement exists. *National Association for the Advancement of Colored People v. Medical Center, Inc.,* 599 F.2d 1247, 1249 n.6 (3d Cir. 1979); *Whitaker v. Board of Higher Education,* 461 F.Supp. 99, 107–09 (E.D.N.Y.1978).

"Even in the absence of injury to itself, an association may have standing solely as the representative of its members. . . . The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. . . . The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit."

422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975) (citations omitted). Here, the complaint alleges that the members of the Foundation, who include epileptics, "have been subjected to discrimination by defendants' policies that deny employment and promotion opportunities. . . ." (¶ 17). Since these allegations state an injury to the members of the Foundation, and since allegations of injury to the members of the organization suffice to give that organization standing, the Foundation has standing to sue.[13]

\*    \*    \*    \*    \*    \*

The motion to dismiss is denied. The plaintiffs may assert a private right of action under section 503, all available administrative remedies have been exhausted, and the Foundation has standing to sue.

It is so ordered.

---

**13.** The complaint alleges in addition, that the Foundation's patient care programs and medical identification programs have been injured by Con Ed's policies that encourage epileptics to conceal their disease, and that is programs of public education are injured by Con Ed's policies that "perpetuate the stigma and stereo-type of epilepsy." (¶ 17) Because the allegations of injury to the members of the Foundation are sufficient to confer standing on the Foundation, we express no view on whether these allegations state a sufficiently concrete injury to confer standing.