**Rick DURAN, Plaintiff,**

v.

**CITY OF TAMPA, and City of Tampa Civil Service Board, Defendants.**

**No. 76–683 Civ. T–K.**

United States District Court,
M. D. Florida,
Tampa Division.

March 15, 1977.

David C. Wiitala, Yanger & Singletary, Tampa, Fla., for plaintiff.

Matias Blanco, Jr., Asst. City Atty., Tampa, Fla., for defendants.

## MEMORANDUM OPINION/ORDER

KRENTZMAN, District Judge.

### BACKGROUND

The Court has for consideration the plaintiff's motion for preliminary injunction. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331(a) and 1343(3). Two hearings were held on this matter and on both occasions the Court received testimony. The basis of the plaintiff's complaint alleges that the defendants violated both the plaintiff's fourteenth amendment due process rights and his rights pursuant to 29 U.S.C. §§ 793 and 794 by failing to hire him for the position of policeman because of his history of epilepsy.

### FACTS

In April, 1975, the plaintiff, who is a twenty-eight year old male, applied to the defendant, City of Tampa, for the position of policeman. Soon thereafter the City administered both a written and oral examination to the plaintiff and also gave him a polygraph test. The plaintiff satisfactorily completed all of the defendant's examinations. In October, 1975, the City placed the plaintiff's name on an eligibility list for the position of policeman. On December 19, 1975, the plaintiff was requested by the City to appear for a physical examination. Later the same day the defendant contacted the plaintiff and informed him that a physical examination would not be necessary because his past history of epilepsy would automatically exclude him from service as a policeman. The plaintiff attempted through several avenues to have the defendants reverse its decision but to no avail. The plaintiff filed this suit on August 26, 1976.

The plaintiff's history of epilepsy consisted of four episodes of grand mal seizures in 1958 and several petit mal seizures or blank staring episodes during 1959. The plaintiff has not experienced any seizures of either variety since 1959 and discontinued any medication related to epilepsy in July, 1966.

At the hearings the plaintiff called two expert witnesses both of whom were physicians who specialize in neurological disorders and both of whom had personally examined the plaintiff and his medical history. The unrebutted testimony of both physicians was that the plaintiff had a history of epilepsy as a child which he had outgrown and was at present perfectly able to serve from a medical perspective as a policeman. The testimony also indicated Mr. Duran's likelihood of having a seizure in the future was equal to that of any person in the general population (i. e., the plaintiff's proclivity for having seizures was in no way increased by his past history of epilepsy). Both physicians concluded that Mr. Duran could no longer be considered an epileptic and he suffered no continuing effects from his childhood experiences with seizures.

The plaintiff also called Marshall B. Jesse, the deputy personnel director for the City of Tampa. Mr. Jesse testified that the City of Tampa Civil Service Board Medical Standards automatically excluded an applicant for a Group I position (firefighter or policeman) if he or she had a history of epilepsy. Mr. Jesse also stated that the medical standards used by the Civil Service Board had been designed in 1952 and had not undergone substantial review since 1966. The review in 1966 was by the City's retirement board which determined disabilities relating to pensions and not qualifications for persons who were applying for new positions.

The defendant presented only one witness, Dr. Harold Sutker, the City of Tampa Physician. Dr. Sutker testified that he had

not examined the plaintiff and to his knowledge no other City physician had done so.

## MOTION FOR PRELIMINARY INJUNCTION

In order for the Court to grant a preliminary injunction four essential prerequisites must be proved:

1. A substantial likelihood the plaintiff will prevail on the merits.
2. The threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendant.
3. Granting the preliminary injunction will not disserve the public interest.
4. A substantial threat that the plaintiff will suffer irreparable harm if the injunction is not granted.

*Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975).

Element 1: The plaintiff's complaint alleges the defendants have violated the plaintiff's fourteenth amendment equal protection and due process rights, his rights pursuant to 29 U.S.C. §§ 793 and 794 and various Florida Statutes. A thorough analysis of the sparce case law in this area indicates that the plaintiff does have a substantial likelihood he will prevail on the merits of at least two of the grounds asserted.

The Supreme Court's analysis in *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) can readily be applied to the plaintiff's case. In *La Fleur* the Court found the mandatory maternity leave policy under which a pregnant teacher in the Cleveland school system was forced to take maternity leave without pay at a period five months prior to delivery was a violation of her due process rights. The School Board in *La Fleur* argued that since "at least some teachers become physically incapable of adequately performing certain of their duties during the latter part of pregnancy", the mandatory maternity leave policy assured a physically capable instructor in the classroom and protected the health of the mother and her unborn child. *Id.* at 641, 94 S.Ct. at

797. The Court rejected such an argument and found that the mandatory cutoff dates established an irrebuttable presumption about the teacher's competence during pregnancy and could not pass muster under the due process clause.

In *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) the Supreme Court was presented with a situation in which a state statute established a similar irrebuttable presumption. In *Stanley* an Illinois law set forth an irrebuttable determination that unmarried fathers were unsuitable and neglectful parents. The Supreme Court found the Illinois statute which promoted efficient and certain determination of guardianship issues was violative of the due process clause. The Court in *Stanley* found:

"Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determination of issues of competence and care, when it specially disdains present realities in deference to past formalities, it needlessly risks running roughshod over important interests of both the parent and the child. It therefore cannot stand. Id. at 656–7, 92 S.Ct. at 1215."

The City of Tampa Civil Service Board's Medical Standards lists as the principal objective of the standards to "select candidates for City employment who are physically fit and who can reasonably be expected to remain so." Given this noble purpose, the Board promulgated Standard K(4)(a) which states, "Not Acceptable for Group I, Epilepsy." The Board has further interpreted Standard K(4)(a) to automatically exclude from employment an applicant with a history of epilepsy even prior to medical examination. Thus, the Medical Standards have created an irrebuttable presumption to exclude all individuals from employment who have suffered from epilepsy.

■ The Court is of the opinion that the Medical Standards sweep too broadly and include within their ambit those individuals, like the plaintiff, whose history of epilepsy

in no way infringes upon their present ability to perform the duties and tasks required by the position to which they have applied. Thus, the Court is of the opinion the absolute presumption established by Standard K(4)(a) as applied to the plaintiff is violative of his due process rights. At minimum, the due process clause mandates that the defendants provide the plaintiff with an individual determination of his medical status. Accordingly, it is the judgment of the Court that the plaintiff has a substantial likelihood of prevailing on the merits of his due process claim.

The Court is also of the opinion the plaintiff's second claim pursuant to 29 U.S.C. §§ 793 and 794 is meritorious. The Rehabilitation Act of 1973 states in part:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

Section 706(6) defines a handicapped individual as:

". . . any person who (a) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (b) has a record of such impairment, or (c) is regarded as having such an impairment."

The plaintiff clearly fits within the definition of handicapped in category (c) and the parties have stipulated to the fact that the City of Tampa Police Department receives in excess of $2500 from the federal government, a prerequisite to the application of this statute.

Although the provisions of 29 U.S.C. §§ 793 and 794 have rarely been interpreted, one decision clearly discusses the issues presented herein. In *Gurmankin v. Costanzo*, 411 F.Supp. 982 (E.D.Penn.1976) Judge Newcomer construed the Rehabilitation Act of 1973 to offer a remedy to a blind woman who had been automatically excluded from a teaching position because of her handicap.

Although the Court in *Gurmankin* only tangentially dealt with the statute because the plaintiff therein had not shown she was "otherwise qualified", it did find the statute to require a nondiscriminatory evaluation of the competence of the applicant.

In the instant case, the defendants determined the plaintiff's abilities and qualifications through a battery of tests and balked at hiring him only when presented with his history of epilepsy. Thus the plaintiff, who is "otherwise qualified", was refused a physical examination and employment based on the defendants' presumption of unfitness. The Rehabilitation Act of 1973 is applicable in this instance and the plaintiff's claim has a substantial likelihood of success.

Elements 2 and 3: The Court will deal with these two elements together because of their intimate interrelationship in the context of this case. In light of the fact that no evidence was adduced which indicated the plaintiff had an increased likelihood of seizures or that his past history of epilepsy would present any future restrictions on his employment as a policeman, the Court is convinced the threatened and existing injury to the plaintiff far outweighs any threatened harm the injunction may do to the defendants. The Court is also certain the public interest is not disserved by injunctions which ferret out discrimination against individuals whose past handicap continue to effect their present ability to find and retain employment. The clearly enunciated public purpose for the Rehabilitation Act of 1973 is to:

"promote and expand employment opportunities in the public and private sections for handicapped individuals and to place such individuals in employment."

■ As in the other discrimination contexts, the Court is especially predisposed against irrebuttable presumptions which are inextricably intertwined with prerequisites of public employment and which are without basis in fact. This is especially true when practical and inexpensive alternatives can facilitate the elimination of such discrimination. The public interest de-

mands that all individuals capable of performing a particular task be placed on an equal footing in acquiring such positions, and society is indeed diminished when the valuable contributions of such individuals are not put to good use.

▇▇▇ Element 4: The final prerequisite which the plaintiff must prove is that irreparable injury will result from the denial of a preliminary injunction. In the instant case, the plaintiff has not shown such irreparable injury. A mere loss of income or damage of reputation would fall short of the type of irreparable injury upon which a preliminary injunction must be predicated. *Sampson v. Murray,* 415 U.S. 61, 91, 94 S.Ct. 937, 39 L.Ed.2d 166; *Morgan v. Fletcher,* 518 F.2d 236 (5th Cir. 1975); *Virginia Petroleum Jobbers Assn. v. Federal Power Commission,* 104 U.S.App.D.C. 106, 259 F.2d 921 (1958). The Court in *Virginia Petroleum Jobbers* stated "The possibility that adequate compensatory or other corrective relief will be available at a latter date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm". In light of the remedies which are available to fully assist the plaintiff at the completion of this litigation and because of the possibility of prejudice and harm to the defendant prior to full hearing, the Court is of the opinion the plaintiff has not shown the requisite irreparable injury. Also of significance to the Court in its determination is the fact that an almost immediate trial of these issues is anticipated. Accordingly, it is

ORDERED:

1. The plaintiff's motion for preliminary injunction is DENIED.

2. The defendants' motion to dismiss, on all the asserted grounds, is DENIED consistent with this Court's statements at hearing.

3. The Clerk of the Court is directed to schedule this case for trial on the Court's April trial calendar.

4. Both parties are directed to file a memorandum of law addressed to whether the defendant has a right to a jury trial on the issues presented.