James **ANDERSON**, Plaintiff,

v.

**ERIE LACKAWANNA RAILWAY CO. et al., Defendants.**

**No. C78–1232Y.**

United States District Court, D. Ohio, E. D.

Feb. 8, 1979.

Staughton C. Lynd, NE Legal Services, Youngstown, Ohio, for plaintiff.

Thomas R. Skulina, Riemer, Oberdank & Skulina, John J. Horrigan, Cleveland, Ohio, Dennis A. Arouca, Assoc. Labor Counsel, Consolidated Rail Corp., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Alleging jurisdiction under 28 U.S.C.A. § 1331 (federal question) and section 1337 (Congressional acts regulating commerce), plaintiff James Anderson brings this action under section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (P.L. 93–112, 87 Stat. 357, Sept. 26, 1973, as amended) (the Act).

Plaintiff, alleging to be handicapped, sues defendants Erie Lackawanna Railway Company (Erie) and its successor the Consolidated Rail Corporation (Conrail) for violations of their obligations in contracts with the United States government to engage in affirmative action to employ handicapped individuals. These provisions are made a part of certain government contracts for the procurement of personal property and services by section 503, 29 U.S.C. § 793.[1]

Alleging jurisdiction under 28 U.S.C. § 1361, "Action to compel an officer of the United States to perform his duty," Mr. Anderson names Secretary Ray Marshall of the United States Department of Labor as a defendant and seeks an order directing the Secretary to promptly investigate his complaint.

In his complaint, Mr. Anderson alleges: He was employed by Erie as a fireman in April, 1971. An Erie physician found plaintiff's "color perception to be acceptable at this time" and acceptable at two annual physical exams thereafter. In an exam performed in July, 1973, plaintiff failed a test related to being upgraded to engineer "because of an inability to perceive certain colors. . . ." On August 15, 1973, Erie disqualified Mr. Anderson from employment as either an engineer or fireman and he was laid off.

The complaint alleges various efforts on the part of plaintiff to secure employment with Erie in a capacity where visual color perception is not critical to job performance. These efforts have been to no avail. Mr. Anderson has also "brought his situation to the attention of . . . [Conrail which] . . . has done nothing to correct this situation."

In April, 1976, plaintiff "brought his situation to the attention" of the Department of Labor. Mr. Anderson alleges that even though he has received an "apolog[y] for the lengthy delay in processing his complaint" from the Department of Labor's Associate Director for Veterans and Handicapped Workers, he has received no further word as to action on his complaint as of September 22, 1978.

Mr. Anderson requests that the Secretary be ordered to act on his complaint or alternatively, that he be reinstated to employment with defendant Conrail and be awarded back wages and benefits.

Defendants Erie and Conrail have moved to dismiss the complaint under Fed.R.Civ.P.

---

1. Section 503 of the Rehabilitation Act, 29 U.S.C. § 793, "Employment under Federal contracts," provides:

   (a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(6) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

   (b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

12(b)(6) on the ground that section 503 of the Act does not grant Mr. Anderson a private cause of action. The motion is now considered upon the complaint, the briefs of the parties, and the section's legislative history.

The parties are in agreement on two points. First, the language of section 503 does not explicitly grant a private cause of action to enforce its provisions. Secondly, there being no explicit grant of a private action, the test to determine whether a private right of action is implicitly granted in section 503 is enunciated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).[2] The application of *Cort*'s test to section 503 is dispositive.

## I.

### ESPECIAL BENEFIT

The first requirement of *Cort* is that Mr. Anderson be a member of "the class for whose *especial* benefit the statute was enacted." The Act was obviously enacted for the benefit of handicapped persons. Plaintiff has alleged to be handicapped by virtue of "a partial deficiency in color vision." On this motion to dismiss, the court accepts, as it must, the allegation that Mr. Anderson is handicapped within the meaning of the Act.[3]

**2.** The four-part test of *Cort v. Ash, supra,* states:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted, ". . .— that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations omitted.]

**3.** As the parties have not addressed the issue, the court expresses no view as to whether, as either a matter of law or fact, Mr. Anderson's

## II.

### LEGISLATIVE INTENT

Mr. Anderson argues that the second requirement of *Cort* is met because Congress intended that individuals bring private actions to enforce section 503. He argues:

First Congress has expressly stated its intent (1) that a private right of action exists to enforce section 504 of the Act, (2) that sections 503 and 504 should be administered in a "consistent" manner. This intention is set forth in Senate Reports (Labor and Public Welfare Committee) No. 93–1297, Nov. 26, 1974, 1974 U.S. Code Cong. and Admin.News, pp. 6373, 6390–91, as follows: [full quotation omitted].

The language of the Senate Report No. 93–1297 relied upon by plaintiff briefly sketches the sanctions to be used by the federal government to achieve contractor compliance with section 504[4] and concludes that section 504 will "permit a judicial remedy through a private action." The immediately following paragraph opens:

It is intended that sections 503 and 504 be administered in such a manner that a *consistent, uniform, and effective* Federal approach to discrimination against handicapped persons would result. [Emphasis as urged by plaintiff.]

1974 U.S.Code Cong. & Admin.News, pp. 6373, 6391. In support, plaintiff cites sever-

deficiency in color vision renders him a "handicapped individual" within the definitions of the Act and its regulations.

Title 29 U.S.C. § 706(6) states that for the "purposes of subchapter . . . V of this chapter [which includes section 503], such term means any person who (A) has a physical or mental impairment which substantially limits one or more of such person's major life activities . . . ."

**4.** Section 504 of the Act, 29 U.S.C. § 794, "Nondiscrimination under Federal grants," provides:

No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

al cases permitting private suits under section 504 of the Act.[5]

The language of section 504 of the Act parallels 42 U.S.C. § 2000d[6] in prohibiting discrimination. This prohibition of discrimination in section 504 is different in kind from section 503's requirement of contractual obligations in certain government contracts for the establishment of affirmative action programs in favor of handicapped individuals.[7] The two sections serve different purposes; and the legislative record as it bears on Congress' intent as to section 503 should not be indiscriminately blurred into the record as to section 504.

Section 503 clearly grants an individual the non-judicial remedy of complaining to the Department of Labor when that individual believes a government contractor has violated contractual obligations of affirmative action. Under *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974), the statutory grant of a specific remedy indicates a congressional intent to not grant further remedies:

A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *Botany Mills v. United States,* 278 U.S. 282, 289 [49 S.Ct. 129, 132, 73 L.Ed. 379] (1929). This principle of statutory construction reflects an ancient maxim—*expressio unius est exclusio alterius.*

The statutory construction required by *National Railroad* does not end the inquiry, for as stated there, "even the most basic general principles of statutory construction must yield to clear contrary evidence of legislative intent." *National Railroad* at 458, 94 S.Ct. at 693. Thus, this inquiry must search the legislative history for "clear . . . evidence of legislative intent" to create a private right under section 503.

Neither have the parties pointed out, nor has the court's research revealed, any mention of a private right of action in the Act's legislative history other than the previously quoted Senate Report No. 93–1297 reference to the enforcement of section 504. Even this explicit reference to a private right of action has been suggested to be only a grant of a judicial review of administrative action in response to violations of section 504. See *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977); *Rogers v. Frito-Lay, Inc.,* 433 F.Supp. 200 (N.D.Tex.1977).

On July 11, 1974 the Department of Labor issued interim regulations for its enforcement of section 503. The ensuing correspondence between the U.S. Senate Committee on Labor and Public Welfare (the Committee) and the Office of the Secretary

---

**5.** Plaintiff cites the following as holding that a right of private action is granted under section 504 of the Act: *Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809 (E.D.Pa.1977); *Davis v. Bucher,* 451 F.Supp. 791 (E.D.Pa.1978); *Duran v. City of Tampa,* 430 F.Supp. 75 (M.D. Fla.1977); *Vanko v. Finley,* 440 F.Supp. 656, 659 (N.D.Ohio 1977).

**6.** Title 42, U.S.C. § 2000d provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**7.** Senate Report No. 93–1297, *supra,* at 6390, states:

It should also be noted that, . . . section 503 itself relates solely to employment and thus the adjective "qualified" in modification of "handicapped individual" in that section clearly requires that the "employability" of the handicapped individual in question is a prerequisite to section 503 application.

Section 504 was patterned after, and is almost identical to, the anti-discrimination language of section 601 of the Civil Rights Act of 1964, 42 U.S.C. 2000d–1 (relating to race, color, or national origin), and section 901 of the Education Amendments of 1972, 42 U.S.C. 1683 (relating to sex). The section therefore constitutes the establishment of a broad government policy that programs receiving Federal financial assistance shall be operated without discrimination on the basis of handicap.

of the Department of Labor [8] are made an appendix to S.R.No.93–1297. 1974 U.S. Code Cong. & Admin.News, *supra,* at p. 6425. In its initial letter, the Committee expressed its dissatisfaction with the Secretary's regulations:

. . . In our view these regulations represent a step backward from the purposes of section 503. . . .

Thereafter, the August 21 letter lists by sections its dissatisfaction with the regulations. The numerous specific and detailed criticisms of the Committee address problems associated with the Department of Labor's internal handling of complaints and imposition of sanctions upon government contractors by that department. The letter is devoid of any suggestion that the Committee objected to the regulations' lack of any mention that the legislation created a private cause of action. Similarly, the Secretary's letter of September 24 in response and the further letter of the Committee on November 11, exhibit a concern with the practical details and workings of the mechanisms to enforce section 503. Both letters lack any suggestion that either the Secretary or the Committee contemplated a private right of action as a part of the section 503 enforcement scheme.

The present regulations of the Secretary for enforcement of section 503 contain no provisions concerning a private right of action. These regulations, having been promulgated by the agency charged with enforcing section 503, are entitled to weight in construing the intent of Congress in enacting the section. Title 41, C.F.R. Pt. 60–741 (promulgated April 16, 1976, 41 F.R. 16148), "Affirmative Action Obligations of Contractors and Subcontractors for Handicapped Workers," section 60–741.28 lists a sequence of sanctions that may be utilized by the Secretary to force compliance with section 503. "Informal means, including conciliation and persuasion," are to be used "whenever possible." Further, sanctions of withholding progress payments, contract termination, and debarment from future contracting are also authorized. Section 60–741.28(b) also provides:

(b) *Judicial enforcement.* In addition to the administrative remedies set forth herein, *the Director may,* within the limitations of applicable law, seek appropriate judicial action to enforce the contractual provisions set forth in § 60–741.4 including appropriate injunctive relief. [Emphasis added.]

The regulations cannot be construed as recognizing a cause of action in favor of a private individual.

In sum, section 503 specifically provides for an individual to complain to the Department of Labor concerning violations of affirmative action contracts, and that department's regulations provide for the Secretary to enforce the contracts. Neither the legislative history nor the regulations of 41 C.F.R. Pt. 60–741 indicate that the remedies under section 503 extend to or include private rights of action. Thus, there is no "clear contrary evidence of legislative intent" to negate the presumption required by *National Railroad, supra,* that Congress intended the administrative complaint to be the handicapped individual's only means to remedy violations of section 503.

### III.

### CONSISTENCY WITH LEGISLATIVE SCHEME

To imply a cause of action, the test in *Cort* requires that to do so be "consistent with the underlying purposes of the legislative scheme." Plaintiff argues that it is "consistent, uniform and effective" to imply a private action under section 503 to match the private action that several courts have held to exist under section 504.

As seen, the regulations of the Secretary to enforce section 503 favor "conciliation and persuasion, whenever possible." The existence of a private cause of action that

---

**8.** Letter of August 21, 1974 from the Committee to Peter J. Brennan, Secretary of Labor; letter of September 24, 1974 from Richard F. Scubert for the Secretary to Harrison A. Williams, Chairman of the Committee; and letter of November 11, 1974 from the Committee to the Asst. Secretary for Employment, Dept. of Labor.

could be pursued by an individual without regard to any conciliation between the Secretary and a contractor could blunt the effectiveness of informal efforts to remedy section 503 violations.

The present regulations authorize the Secretary to withhold contract payments, cancel the contract, and disbar a contractor. The possibility of civil liability for damages in an action brought by a private individual would be of minimal value to motivate a contractor to comply with affirmative action requirements when such a civil liability is compared with the sanctions which the Secretary can impose. Thus, a private right of action would be of marginal utility in enforcing section 503.

To administer sections 503 and 504 "in such a manner that a consistent, uniform, and effective Federal approach to discrimination against handicapped persons would result," S.R. 93–1297, does not require the finding of a private action under section 503. The enforcement of section 503 is entrusted to the Department of Labor whereas the enforcement of section 504 is a responsibility of the Secretary of Health, Education and Welfare. Thus, the enforcement as well as the function of sections 503 and 504 (affirmative action and antidiscrimination respectively) are separate and distinct. As seen, the legislative history does not indicate that Congress's intent was the same as to each section. Congress specifically provided for an administrative remedy in the case of section 503 and stated in S.R. 93–1297 that a judicial remedy was envisioned to enforce section 504. These facts indicate that when Congress stated that sections 503 and 504 were to be "consistent" and "uniform," Congress meant that the two responsible agencies were not to work at cross purposes or to duplicate each other's efforts, not that identical methods of enforcement were envisioned.

Implying a private cause of action under section 503 would be inconsistent with the informal conciliation efforts mandated in the section 503 regulations and would add little to the presently available sanctions that encourage compliance with section 503 by government contractors.

## IV.

## TRADITIONAL STATE LAW

*Cort* states that whether a cause of action is "one traditionally relegated to state law, in an area basically the concern of the States" is a relevant consideration in determining whether a private right is to be implied. Both laws favoring the handicapped and those preventing discrimination against the handicapped are of too recent an origin to be considered "traditional" state law. Though it could be said by concentrating solely upon the language of section 503, that it is not a basic concern of the states to enforce the provisions of the federal government's contracts for the procurement of personal property and nonpersonal services, the "area of concern" is affirmative action in favor of the handicapped.

Looking to the law of the state in which this court sits, Ohio, it is apparent that Ohio is concerned with the handicapped.

Effective July 23, 1976, the provisions of Chapter 4113 of the Ohio Revised Code, "Civil Rights Commission," were amended to prohibit discrimination against the handicapped. Under O.R.C. § 4112.05(A), "conciliation and persuasion" are the preferred "informal method" of curing violations of Chapter 4112. Informal conciliatory attempts by the state agency to cure discrimination could be—but would not necessarily be—hampered by the existence of a private right to enforce affirmative action programs.

The laws of the state of Ohio that are noted below evidence the breadth of Ohio's concern for the handicapped.[9] Nothing in the noted provisions is in apparent conflict

---

9. O.R.C. Chapter 4115, "Products and Services of the Severely Handicapped," provides an affirmative action of sorts by exempting the handicappeds' products and services from the statutory requirement placed upon all state agencies to seek competitive bids.

Ohio housing developments must be accessible to the handicapped, O.R.C. §§ 128.13 and

with a federal private right of action. These laws merely manifest a state concern for the handicapped that parallels the federal concern evidenced by sections 503 and 504.

There is no inherent conflict between federal rights and state rights for the handicapped that would, in itself, require the conclusion that the area of handicapped law is a state affair that should not be intruded upon by a federal private right of action.

Applying *Cort,* it is concluded that Congress intended the individual's complaint to the Department of Labor to be the sole means for a private person to enforce the contractual provisions created by section 503—a private right of action cannot be implied.[10]

Upon the grounds and reasons discussed above, the motions to dismiss for failure to state a claim upon which relief can be granted of defendants Erie Lackawanna Railway Company and Consolidated Rail Corporation are granted.

IT IS SO ORDERED.

128.22, 3735.02, as must all public buildings, O.R.C. Chapter 3781.

Private corporate landlords are allowed a deduction for modifying existing buildings to be accessible to the handicapped in the calculation of net income. O.R.C. § 5733.04(I)(10).

The Department of Transportation is directed to facilitate the use of mass transportation by the handicapped by O.R.C. 5501.05.

Although it apparently lacks the legal power to effect its programs, the "governor's Committee on Employment of the Handicapped" is authorized to conduct various activities to promote the handicapped. O.R.C. § 3303.41.

10. This conclusion is in accord with those cases which have applied the *Cort* test to section 503: *Wood v. Diamond State Telephone,* 440 F.Supp. 1003 (D.Del.1977); *Rogers v. Frito-Lay, Inc.,* 433 F.Supp. 200 (N.D.Tex.1977); *Moon v. Roadway Express, Inc.,* 439 F.Supp. 1308 (N.D.Ga.1977).

This court's conclusion is in conflict with *Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809 (E.D.Pa.1977) and *Duran v. City of Tampa,* 430 F.Supp. 75 (M.D.Fla.1977) which have been cited by plaintiff for their holdings that section 503 grants a private right of action.

Neither *Drennon* nor *Duran* clearly distinguishes its analysis of section 503 from its analysis of section 504.

In *Drennon, supra,* the court relied upon Senate Report No. 93–1297's statement that a private action was to provide a judicial remedy for section 504 to find a private right under that section. As to section 503, the court considered the four factors listed in *Cort v. Ash, supra.* In its *Cort* analysis it is stated:

Courts have previously recognized the federal government's interest in preventing discrimination, on the basis of race, color or national origin, in employment in federally assisted activities and programs and consequently, have implied a right of action under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

*Drennon,* at 815. Section 504 is the section that tracks the language of section 2000d and prohibits discrimination; section 503 bears no similarity in language to section 2000d and does not prohibit discrimination but rather establishes affirmative action programs.

The court in *Drennon,* at 815, continues: See *U. S. by Clark v. Frazer,* 297 F.Supp. 319 (M.D.Ala.1968) where the court held that the Attorney General had standing to bring an action to enforce federal statutes and regulations which required state personnel, engaged in the administration of federally financed grant-in-aid programs, to recruit, hire and promote or demote personnel on merit, without regard to race or color; . . . . *U. S. by Clark v. Frazer,* which involved statutes prohibiting discrimination in programs financed through federal grants, can be analogized to section 504, but the statute analyzed in *Frazer* is not analogous to section 503 which goes to contractual affirmative action plans.

In *Duran, supra,* the court does not separately analyze sections 503 and 504. In support of its conclusion that the "claim pursuant to 29 U.S.C. §§ 793 and 794 is meritorious," *Duran* at 78, the court states:

Although the provisions of 29 U.S.C. §§ 793 and 794 have rarely been interpreted, one decision clearly discusses the issues presented herein. In *Gurmankin v. Costanzo,* 411 F.Supp. 982 (E.D.Penn.1976) Judge Newcomer construed the Rehabilitation Act of 1973 to offer a remedy to a blind woman who had been automatically excluded from a teaching position because of her handicap. Although the Court in *Gurmankin* only tangentially dealt with the statute because the plaintiff therein had not shown she was "otherwise qualified," it did find the statute to require a nondiscriminatory evaluation of the competence of the applicant.

However, a reading of *Gurmankin, supra,* reveals that neither did the plaintiff allege jurisdiction under section 503, nor did the court there find a private cause of action under section 503.