**David E. CLARKE, Plaintiff,**

v.

**FELEC SERVICES, INC., Defendant.**

**Civ. No. F79–34 Civil.**

United States District Court,
D. Alaska.

May 1, 1980.

William B. Schendel, Fairbanks, Alaska, Daniel Siegel, Siegel, Meyers, Taub, Siegel & Friedman, Oakland, Cal., for plaintiff.

Steven S. Tervooren, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Alaska, for defendant.

## MEMORANDUM AND ORDER

von der HEYDT, Chief Judge.

THIS CAUSE comes before the court on defendant's motion to dismiss.

Plaintiff David Clarke, a resident of Clear, Alaska, and a handicapped individual,[1] was terminated from his position as electrician leadman at Clear Air Force Base by his employer, FELEC Services, Inc., a corporation conducting maintenance operations for the United States Air Force. Mr. Clarke brought this action to redress alleged violations of Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 (hereinafter "the Act"), claiming that his termination was due to his handicap despite any significant connection between the handicap and the performance of his job duties.

Section 503 of the Act in relevant part provides:

> Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title.

29 U.S.C. § 793(a).

Defendant FELEC has moved to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

This case presents for decision a single question: does an implied private right of action exist under § 503 of the Act? United States District Courts to date have split almost evenly on this question,[2] while the

---

1. Mr. Clarke suffers from *retinitis pigmentosa*, commonly known as "tunnel vision."

2. Private action exists: *Hart v. County of Alameda*, 485 F. Supp. 66 (N.D.Cal.1979); *lin v. Con. Edison Co.*, 482 F.Supp. 1165 (S.D.N.Y.1980); *Drennon v. Philadelphia Gen-*

Fifth Circuit Court of Appeals, the only Circuit Court which has had occasion to rule, has answered in the negative. *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074 (5th Cir. 1980).

The series of Supreme Court pronouncements considering the existence of implied rights of action under statutes has left intact the four step analysis of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):[3]

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted).

The first *Cort* factor, whether the plaintiff is " 'one of the class for whose especial benefit the statute was enacted,' " and the third *Cort* factor, whether it is "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff," are readily found under the present case. Reference is made to the able

discussions of the application of these factors to a § 503 claim found in *Hart v. County of Alameda,* 485 F.Supp. 66, 68, 75–76 (N.D.Cal.1979); *Rogers v. Frito-Lay, Inc.,* 611 F.2d 1074, 1090–93, 1102–07 (5th Cir. 1980) (Goldberg, J., dissenting).

Before turning to the crucial inquiry concerning legislative intent, the "state law" factor must be considered. An Alaska statute does extend protection against employment discrimination to otherwise qualified individuals whose handicaps do not impair their ability to perform the tasks required by their jobs.[4] Yet it can hardly be said that the existence of this statute illustrates that the safeguarding of handicapped individuals against employment discrimination is an area which has been "traditionally relegated to state law."

First, the statute is of recent vintage, enacted in 1969. Second, it is difficult for this court to perceive how the private enforcement of anti-discrimination provisions in contracts "in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States" can possibly be "basically of concern to the States," especially where ". . . it is the expenditure of federal funds that provides the justification for this particular statutory prohibition." *Cannon v. University of Chicago,* 441 U.S. 677, 708–09, 99 S.Ct. 1946, 1963, 60 L.Ed.2d 677 (1979).

The final and decisive *Cort* factor to be examined concerns the existence of "any indication of legislative intent, explicit or implicit, either to create a remedy or to deny one."

---

*eral Hospital,* 428 F.Supp. 809 (E.D.Pa.1977); *Duran v. City of Tampa,* 430 F.Supp. 75 (M.D. Fla.1977). No private action exists: *Anderson v. Erie Lackawanna Railway Co.,* 468 F.Supp. 934 (E.D.Ohio 1979); *Moon v. Roadway Express, Inc.,* 439 F.Supp. 1308 (N.D.Ga.1977); *Wood v. Diamond State Telephone Company,* 440 F.Supp. 1003 (D.Del.1977); *Miglets v. Erie Lackawanna Ry. Co.,* 19 FEP Cases 379 (N.D. Ohio 1979); *Doss v. General Motors Corporation,* 478 F.Supp. 139 (C.D.Ill.1979); *Coleman v. Noland Co.,* 21 FEP Cases 1248 (W.D.Va. 1980).

**3.** See *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross and Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Kissinger v. Reporters Committee for Freedom of the Press,* —— U.S. ——, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980).

**4.** A.S. § 18.80.220(1).

Many of the district courts considering the question of an implied private right of action under § 503 of the Act have dealt with claims which arose prior to the 1978 amendments to the Act. The pre-amendment legislative materials provide limited assistance in the search for legislative intent. This court finds its inquiry eased considerably by the enactment in 1978 of Section 505 of the Act, 29 U.S.C. § 794a, which in relevant part provides:

In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

29 U.S.C. § 794a(b).

The provision in § 505 for the discretionary award of attorney's fees to prevailing parties (other than the United States) "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter" unmistakably presupposes the existence of a private right of action. The legislative history of § 505 supports this conclusion: [5]

The committee believes that the rights extended to handicapped individuals under Title V, that is, Federal government employment, physical accessibility in public buildings, *employment under federal contracts*, and nondiscrimination under federal grants—are and will continue to be in need of constant vigilance by handicapped individuals to assure compliance and *the availability of attorney's fees should assist in vindicating private rights of action in the case of section 502 and 503 cases*, as well as those arising under section 501 and 504.

S.Rep.No.95–890, 95th Cong., 2d Sess. 19 (1978) (emphasis supplied).

Only one court has considered the 1978 amendments and failed to find a private cause of action under § 503. The Fifth Circuit Court of Appeals, through an exercise in legal reasoning which is difficult to follow, argued that § 505 ". . . un-

doubtedly authorizes an attorney's fee in actions brought to enforce § 503; but it does not necessarily follow that the amendment is intended to authorize private individuals to file civil actions under that section." *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1082 (5th Cir. 1980). The *Rogers* court admitted that "[i]t may, therefore, fairly be said that the 1978 committees of both Houses assumed that a private cause of action had somehow been created in the past," but the court nonetheless concluded that "[a]n assumption is not a law." Id.

While "an assumption is not a law," neither is a law to be construed as a nullity. This court cannot agree that the United States Congress intended by the enactment of § 505 to create a meaningless passage in the United States Code. It would perhaps have been the wiser or more artful course for Congress to have laid all doubt to rest and explicitly recognized a private remedy in its 1978 amendments. Yet it is not for this court to render § 505 meaningless when the intent of the Congress that framed that section is beyond question.

The United States Supreme Court examined a parallel statutory scheme in finding an implied private right of action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681. After considering Congress' presumed familiarity with judicial precedents which had found implied private rights of action under similarly worded statutes, the court concluded:

It is not, however, necessary to rely on these presumptions. The package of statutes of which Title IX is one part also contains a provision whose language and history demonstrate that Congress itself understood Title VI, and thus its companion, Title IX, as creating a private remedy. Section 718 of the Education Amendments authorizes federal courts to award attorney's fees to the prevailing parties, other than the United States, in private actions brought against public educational agencies to enforce Title VI in the context of elementary and secondary edu-

---

**5.** The legislative history of § 505 is thoroughly examined by Judge Goldberg in his dissent in

*Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1097–1101 (5th Cir. 1980).

cation. The language of this provision explicitly presumes the availability of private suits to enforce Title VI in the education context. For many such suits, no express cause of action was then available; hence Congress must have assumed that one could be implied under Title VI itself. That assumption was made explicit during the debates of § 718.

*Cannon v. University of Chicago*, 441 U.S. 677, 699–700, 99 S.Ct. 1946, 1958–1959, 60 L.Ed.2d 677 (1979) (footnotes omitted).

*Cannon* admittedly dealt with a situation in which the same Congress which created the substantive legislation also created the provision for the discretionary award of attorney's fees. Yet as Judge Goldberg pointed out in his dissent in *Rogers*:

> Finally, it is a well-established principle that the post-enactment treatment of a statute by Congress is cogent evidence of the intent of Congress at the time of its passage. This principle is not premised on the power of Congress to repeal or amend the original enactment, as the majority suggests; rather it derives from the understanding that Congress is a creditable interpreter of its own actions and that courts should pay heed to its interpretations. See, e. g., *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 1716–17, 60 L.Ed.2d 208 (1979); *Red Lion Broadcasting Co. v. F. C. C.*, 395 U.S. 367, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *Federal Housing Administration v. The Darlington, Inc.*, 358 U.S. 84, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958); *Lloyd v. Regional Transportation Authority, supra*, 548 F.2d [1277] at 1285 (7th Cir. 1977).

*Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1100 (5th Cir. 1980) (Goldberg, J., dissenting).

This court need not at this time go so far as to say that a private right of action existed under § 503 of the Act from 1973 until the enactment of the 1978 amendments. Whatever uncertainty may have existed as to the existence of an implied private right of action under § 503 was eliminated by the enactment of § 505. As discussed above, the enactments of a subsequent Congress are to be given no less effect than those of the Congress which enacted the original legislation.

This court therefore holds that an implied private right of action under § 503 of the Rehabilitation Act of 1973 has existed since, at the least, the effective date of § 505 of that Act. The violation of § 503 alleged by Mr. Clarke occurred after that date. Thus, he may bring this action to enforce his rights under that section.

Accordingly IT IS ORDERED:

1. THAT defendant's motion to dismiss is denied.

2. THAT defendant's unopposed motion requesting seventeen days after notification of this Order in which to answer plaintiff's request for production is granted.

DATED at Anchorage, Alaska, this first day of May, 1980.