Gary E. SIMON, Appellant,

v.

ST. LOUIS COUNTY, MISSOURI, a Political Subdivision of the State of Missouri; Colonel G. H. Kleinknecht, Supt. of the St. Louis County Police Department, an Agency of St. Louis County, Missouri, both individually and in his official capacity, Appellees.

No. 80–1667.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1981.

Decided Aug. 11, 1981.

Rehearing and Rehearing En Banc Denied Sept. 9, 1981.

---

Robert H. Grant, Deputy County Counselor, Clayton, Mo., argued, Thomas W. Wehrle, St. Louis County Counselor, Andrew J. Minardi, Associate County Counselor, Clayton, Mo., for appellees.

Francis L. Ruppert, Clayton, Mo., argued, Kent Hull, UCIR, East Lansing, Mich., for appellant.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

Plaintiff-appellant Gary Simon brought an action in the district court [1] alleging that defendants-appellees had illegally discriminated against him because of his physical handicap in refusing to rehire or reinstate him as a commissioned police officer for St. Louis County. Simon appeals from a judgment in favor of appellees on all issues. The district court, 497 F.Supp. 141, held, *inter alia*, (1) that Simon had no private right of action under section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793; (2) that although Simon had standing to bring a private right of action under section 504 of the Act, 29 U.S.C. § 794, he did not establish appellees' liability under that statute; and (3) that appellees had not violated Simon's due process rights to reinstatement.[2] We affirm in part, reverse in part, and remand for further consideration.

## I. FACTS

Simon was a commissioned police officer in St. Louis County, Missouri. On November 24, 1971, Simon was shot and wounded, and was diagnosed as having a condition of paraplegia. On July 5, 1972, he was terminated as a St. Louis County commissioned police officer for the stated reason that because of his injury, he was unable to fulfill the duties of a St. Louis County police officer.[3]

Simon was still diagnosed as a paraplegic at the time of trial, in August of 1978 and September of 1979, although his condition had improved somewhat through surgery and rehabilitative treatment. He required the use of leg braces and crutches to walk and could not support the weight of his body on either leg without the aid of crutches. It was further stipulated, and the district court found:

> He cannot run, jump, hop, stoop, turn, pivot or perform similar movements without the aid of a supporting device or the aid of another person. Plaintiff requires the use of braces and crutches to gain ingress and egress from an automobile or other motor vehicle. He cannot drive an automobile without the aid of specially fitted hand controls and automatic transmission.

*Simon v. St. Louis County*, 497 F.Supp. 141, 144 (E.D.Mo.1980).

In March of 1976, Simon met with defendant Colonel G. H. Kleinknecht, Superintendent of the St. Louis County Police Department, and requested that he be reinstated as a commissioned police officer. Colonel Kleinknecht refused to consider Simon because he considered Simon to be physically unable to assume the job. Simon made a formal application for a job as a commissioned police officer on August 16, 1976. He has not been reinstated.

The police department is run on a daily basis by the superintendent, who serves under a Board of Police Commissioners. The superintendent is responsible to the Board for the supervision, management, and control of the police department and all its personnel.

## II. SECTION 503

Simon alleges that appellees violated section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793.[4] The district court, relying

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

2. The district court also held that there was no violation of Simon's due process rights in his termination without a pretermination hearing. Simon has not challenged this holding on appeal. In any event, we agree with the district court that under the particular facts of this case Simon received that process which was due.

3. Another stated reason for the termination was that the injury did not occur while Simon was in the line of duty. Simon successfully appealed a denial of disability benefits and, in so doing, obtained a reversal of the department's position that he was not in the line of duty.

4. 29 U.S.C. § 793 provides in pertinent part:
   (a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party

on *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980), held that there was no private right of action available to Simon under section 503.

■ Section 503 does not expressly provide for a private right of action. In determining whether a private right of action is implicit in a statute not expressly providing so, the standards of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and its progeny, *e. g., Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), apply. We have examined the factors in *Cort v. Ash, supra*, in detail and find ourselves in basic agreement with the analysis in *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1237–44 (7th Cir. 1980), and *Rogers v. Frito-Lay, Inc., supra*, 611 F.2d at 1078–85, both of which held that there was no private right of action pursuant to section 503.[5] We therefore affirm the district court's holding that there is no private right of action under section 503.

## III. SECTION 504

In *Carmi v. Metropolitan St. Louis Sewer District*, 620 F.2d 672 (8th Cir. 1980), *cert. denied,* 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1981), this court held that an individual plaintiff had a private right of action under section 504 of the Act if a primary objective of the defendant's federal funding was to provide for employment.[6]

■ We have examined the record in the instant case and agree with the district court that a primary objective for the federal funds going to the St. Louis County Police Department is to provide for the employment of commissioned police officers. Thus, the district court properly concluded that Simon had standing to bring a suit under section 504.

■ Section 504 provides in pertinent part:

contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.

(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.

**5.** *Accord, Hoopes v. Equifax, Inc.*, 611 F.2d 134, 135 (6th Cir. 1979). These appear to be the only circuit court decisions on this issue. The district court decisions on this point are fairly evenly divided between those holding section 503 creates a private right of action; *e. g., California Paralyzed Veterans Ass'n v. F.C.C.*, 496 F.Supp. 125, 127–31 (C.D.Cal.1980); *Clarke v. Felec Services, Inc.*, 489 F.Supp. 165 (D.Alaska 1980); *Hart v. County of Alameda*, 485

F.Supp. 66 (N.D.Cal.1979); *Chaplin v. Consolidated Edison Co.*, 482 F.Supp. 1165 (S.D.N.Y. 1980); *Duran v. City of Tampa*, 430 F.Supp. 75 (N.D.Fla.1977); *Drennon v. Philadelphia Gen. Hosp.*, 428 F.Supp. 809 (E.D.Pa.1977), and those holding section 503 does not create a private right of action, *e. g., Meyerson v. Arizona*, 507 F.Supp. 859 (D.Ariz.1981); *Langman v. Western Elec. Co.*, 488 F.Supp. 680, 685–86 (S.D.N.Y.1980); *Coleman v. Noland Co.*, 21 F.E.P. 1248 (W.D.Va. Jan. 18, 1980); *Doss v. General Motors Corp.*, 478 F.Supp. 139 (C.D.Ill. 1979); *Miglets v. Erie Lackawanna Ry.*, 19 F.E.P. 379 (N.D.Ohio Feb. 28, 1979); *Anderson v. Erie Lackawanna Ry.*, 468 F.Supp. 934 (N.D. Ohio 1979); *Wood v. Diamond State Telephone Co.*, 440 F.Supp. 1003 (D.Del.1977).

**6.** *Carmi v. Metropolitan St. Louis Sewer Dist.*, 620 F.2d 672, 674–75 (8th Cir. 1980), limited what had been construed to be a broader private right of action under section 504, *see, e. g., United Handicapped Fed'n v. Andre*, 558 F.2d 413, 415 (8th Cir. 1977). This limitation was premised upon the 1978 amendments to the Rehabilitation Act of 1973, which made available to persons aggrieved under section 504 the rights, remedies, and procedures of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* Section 2000d–3 provides that no action may be brought against a defendant "except where a primary objective of the federal financial assistance is to provide employment."

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency * * *. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section * * *.

The district court first addressed the issue of whether Simon was an "otherwise qualified handicapped individual." Relying on *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the district court determined that Simon was not an otherwise qualified person.

*Davis* involved a plaintiff with a serious hearing disability who sought to be trained as a registered nurse. Upon the basis of a medical examination, defendant Southeastern Community College determined that plaintiff's hearing disability made it unsafe for her to practice as a nurse. She could not understand speech without reliance upon lip reading. It was also determined that it would be impossible for plaintiff to participate safely in the normal clinical program without substantial modifications, and that those modifications would in fact keep her from realizing the benefits of the program. She was denied admission into the program and as a result brought suit under section 504. The Supreme Court found that plaintiff could not recover because she had not shown herself to be an otherwise qualified person.

The district court, in the instant case, concluded that Simon could not perform all of the department's physical requirements, and that *Davis* states that "[a]n otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis, supra*, 442 U.S. at 406, 99 S.Ct. at 2367. The district court therefore held that Simon was not an otherwise qualified applicant. Furthermore, the court found the modifications the police department would have to make would be substantial.

It is our view that the district court's reading of *Davis* is too rigid. The Supreme Court in *Davis* referred to those handicapped persons who could satisfy all of the "*legitimate* physical requirements" of the defendant's program. *Id.* at 406, 99 S.Ct. at 2367. Part III of the *Davis* opinion discusses whether the physical qualifications Southeastern demanded of the applicant were necessary for participation in its nursing programs. It concluded that the ability to understand speech without lip reading was necessary during the clinical phase of the program and indispensible for many functions that a registered nurse performs. *Id.* at 407, 99 S.Ct. at 2367. The Supreme Court noted that the *only evidence in the record* indicated that nothing less than close, individual attention by a nursing instructor would be sufficient to insure patient safety if respondent took part in the clinical phase of the nursing program. *Id.* at 409, 99 S.Ct. at 2368.

The proper focus in this case is therefore whether the requirements set forth by defendants—(1) the ability to be able to effect a forcible arrest and render emergency aid; and (2) the capacity to be freely transferred to all positions in the police department—are necessary and legitimate requirements of the job. The district court implicitly concluded they were, but also found that "plaintiff has shown that he is able to perform many of the tasks of the job of a commissioned police officer with the Department, and, indeed, nearly all of the tasks of some of its very small bureaus without much accommodation at all." *Simon v. St. Louis County, supra*, 497 F.Supp. at 151.

Our situation is different from that in *Davis*. There is substantial evidence in the record indicating that the physical requirements of the St. Louis County Police De-

partment were not in fact necessary,[7] or were not required of all officers.[8] There was further evidence indicating that the ability of an officer to be completely transferable among all positions was sometimes not required in fact.[9] Nearly all of the evidence that the requirements (*i. e.* the physical ability to effect a forceful arrest, render aid, and to be able to perform all functions of all the departments' positions) are necessary consisted of the testimony of Colonel Kleinknecht.

The Supreme Court in *Davis* stated:

> We do not suggest that the line between a lawful refusal to extend affirmative action and legal discrimination against handicapped persons always will be clear. It is possible to envision situations where an insistence on continuing past requirements and practices might arbitrarily deprive genuinely qualified handicapped persons of the opportunity to participate in a covered program. Technological advances can be expected to enhance opportunities to rehabilitate the handicapped or otherwise to qualify them for some useful employment. Such advances also may enable attainment of these goals without imposing undue financial and administrative burdens upon a State. *Thus, situations may arise where a refusal to modify an existing program might become unreasonable and discriminatory.*

*Southeastern Community College v. Davis, supra*, 442 U.S. at 412–13, 99 S.Ct. at 2370 (emphasis added).

Although based upon the record before us we are not prepared to state that this is a case where the department's refusal to modify its requirements is unreasonable; it is our view that this case must be remanded to the district court for further consideration of this issue.

On remand, the district court should consider whether the requirements for police officers of St. Louis County, as testified to at trial by Colonel Kleinknecht, are reasonable, legitimate, and necessary requirements for all positions within the department. The district court should determine whether the ability to make a forceful arrest and the ability to perform all of the duties of all of the positions within the department are in fact uniformly required of all officers. If not uniformly required, they should not be considered actual requirements for all positions. Also, consideration should be given to Simon's actual physical condition in combination with Simon's police experience, and further determinations made as to exactly what functions within the department he has the physical abilities to perform. Finally, the court should determine whether the accommodations necessary in order to employ Simon as a commissioned police officer are unreasonable.[10]

---

**7.** Depositions indicated that the police departments for Memphis and Kansas City both allowed police officers who became severely handicapped during their employment to remain with the department as commissioned police officers. The depositions indicated those cities' police departments were of the view that there were several useful jobs these individuals could perform.

**8.** There were at least three persons testifying for Simon who had been injured during their employment but remained on the force as commissioned police officers. An examination of the record indicates these individuals did not satisfy all of the physical requirements established in the Department Regulations.

**9.** The evidence from appellees' records indicated several officers had remained in one department for from four to ten years. These departments included Communications, Crimi-

nal Investigation, and Juvenile Affairs. We note that Communications is an area where the district court determined Simon's handicap would not prevent him from performing the great majority of the tasks.

We also note that the fact Simon already has served in different divisions prior to his injury may satisfy much of the purpose behind the department's alleged transferability requirements.

**10.** It is clear that there is no requirement upon appellee to "effect substantial modifications of standards to accommodate a handicapped person." *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979). While the district court below held that substantial accommodations would be required, it is our view that this was based on the yet to be established assumption that the requirements were in fact necessary to the job.

## IV. CONSTITUTIONAL CLAIMS

Simon also alleges on appeal that appellees' physical examinations standards for employment were not reasonably related to the requirements of appellees' program or the employment positions for which Simon applied. Simon alleges this in effect violates his due process rights. The district court considered this claim and found that Simon was not the victim of an improper, irrebuttable presumption, as he had alleged. *See Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (striking mandatory maternity leave for teachers provision stating, "the provisions amount to a conclusive presumption that every pregnant teacher who reaches the fifth or sixth month of pregnancy is physically incapable of continuing."); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (striking down on due process grounds an irrebuttable presumption that unmarried fathers are incompetent to raise their children). *See also Gurmankin v. Costanzo*, 411 F.Supp. 982 (E.D.Pa.1976), aff'd, 556 F.2d 184 (3d Cir. 1977); *Duran v. City of Tampa*, 430 F.Supp. 75 (M.D.Fla.1977).

■ It is immaterial whether this is considered to be a procedural or substantive due process claim. The substantive aspect of due process protects individuals from arbitrary or irrational governmental action. This circuit has taken the majority position [11] that the absence of any claim by the plaintiff that an interest in property or liberty has been impaired is a fatal defect in both procedural due process and substantive due process claims. *Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196, 1202–03 (8th Cir. 1974). Simon has no constitutionally protected property or liberty interest in employment with the St. Louis County Police Department. *See Carmi v. Metropolitan St. Louis Sewer District, supra*, 620 F.2d at 675–76; *Coleman v. Darden*, 595 F.2d 533, 537–38 (10th Cir. 1979). Simon's claim, whether based upon procedural or substantive due process, must therefore fail.

Although not specifically argued in his brief, Simon's argument in this regard could also be construed to allege a violation of the Equal Protection Clause of the Fourteenth Amendment. It is our view that Simon has not demonstrated that he is a member of a class which has been treated in a patently arbitrary manner. Evidence which Simon introduced at trial indicated that several police officers who suffered some type of disability while an officer were allowed to continue on the force as commissioned police officers, often in a different capacity. A classification which, in

The Department of Justice, through the Law Enforcement Assistance Administration (LEAA), is the agency providing federal assistance to the St. Louis County Police Department. It has recently established guidelines for the recipients of its federal assistance as required by section 504. 28 C.F.R. § 42.501–.540. These regulations have been drawn in light of *Davis*, and define "qualified handicapped person" as follows: "[w]ith respect to employment, a handicapped person who, with reasonable accommodation, can perform the essention functions of the job in question." 28 C.F.R. § 42.540(*l*). *See* 29 U.S.C. § 706(7)(B).

The analysis of these regulations, published at 28 C.F.R., Subpart. D App. B, discusses *Southeastern Community College v. Davis, supra*, and concludes:

The critical consideration in determining whether a handicapped person qualifies for participation in a program or activity receiving assistance from the Department is whether a particular physical or mental ability is a necessary prerequisite for effective participation, or whether that ability is only said to be necessary because a recipient of Federal funds has not given adequate consideration to the ways in which stated requirements may be modified in order to permit participation by handicapped persons.

Another commentator has interpreted *Southeastern Community College v. Davis, supra*, to suggest the following rule:

refusal to make accommodations to the special needs of the handicapped becomes illegal when, in view of the relative ease of making the adjustment and other factors bearing in the reasonableness of the policy, the refusal can be said to reflect an animus against handicapped persons.

4 A. Larson, Employment Discrimination § 106.42 at 22–21. *See generally* 28 C.F.R. § 42.511.

11. *See* cases cited in *Kindem v. City of Alameda*, 502 F.Supp. 1108, 1113 & nn.12, 13 (N.D. Cal.1980).

effect, prohibits the hiring of police officers who are unable to run, jump, hop, stoop, turn, pivot, or perform similar movements without aid is rationally related to appellees' asserted goal of protecting the public by having physically fit police officers. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314–16, 96 S.Ct. 2562, 2567–68, 49 L.Ed.2d 520 (1976). The appellees have perhaps not chosen the best means to accomplish this purpose, but, where rationality is the test, a state does not violate the Equal Protection Clause merely because the classification made by its laws are imperfect. *Id.* at 316, 96 S.Ct. at 2568.

## V. OTHER ISSUES

■ The court admitted into evidence the report summary of a medical examination of Simon by Dr. Samuel W. Hardy. The summary appears in the district court's Findings of Fact # 15, *see* 497 F.Supp. at 145. The report concluded:

> I can see no leeway open to me either by the stated physical requirements of this department *nor by the dictates of common sense* to judge Mr. Simon capable of doing police work and it is with regret and sadness that I am forced to find him not an acceptable applicant.

(emphasis added). Simon objected to the italicized portion of the report. He argues the comment is improper opinion evidence and lacks foundation, relying on Fed.R. Evid. 601, 702. The district court has wide discretion in the admission of expert testimony. The phrase in the report appears to be of little probative value; in this trial to the court, we cannot say that Simon was prejudiced by the refusal to strike this phrase.

We have examined Simon's other contentions and find them without merit.

This cause is remanded to the district court for further consideration consistent with Part III of this opinion.

Affirmed in part, reversed and remanded in part, with instructions.